No. 2022-1378

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

BRODRICK JAMAR JENKINS,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court for the District of North Dakota
Case No. 3:19-cv-000188-ARS
The Honorable Alice R. Senechal, United States Magistrate Judge

**BRIEF OF APPELLEE UNITED STATES OF AMERICA**

JENNIFER KLEMETSRUD PUHL
United States Attorney

MELISSA HELEN BURKLAND
MEGAN A. HEALY
Quentin N. Burdick U.S. Courthouse
655 First Avenue North, Suite 250
Fargo, ND 58102
(701) 297-7400
melissa.burkland@usdoj.gov
megan.healy@usdoj.gov

Attorneys for Appellee

July 29, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

STATEMENT OF RELATED CASES ........ x

WAIVER OF ORAL ARGUMENT ........ xi

JURISDICTIONAL STATEMENT ........ 1

INTRODUCTION ........ 2

STATEMENT OF THE ISSUES ........ 3

STATEMENT OF THE CASE ........ 4

SUMMARY OF THE ARGUMENT ........ 10

STANDARD OF REVIEW ........ 11

ARGUMENT ........ 12

I. Jenkins Did Not Assert a Compensable Claim under the Fifth Amendment Due Process Clause and the District Court Did Not Have Jurisdiction to Entertain Such a Claim under the Little Tucker Act. ........ 12

A. The United States has not waived its sovereign immunity to permit Jenkins's Due Process claims because the Fifth Amendment Due Process Clause is not "money-mandating." ........ 14

B. Jenkins's illegal exaction claim is barred by his failure to raise it below. ........ 16

C. Prudential considerations should foreclose this Court from considering Jenkins's exaction claim. ........ 19

D. Jenkins's illegal exaction claim also fails on the merits........ 21

II. There Was No Fifth Amendment Takings Because the Government Lawfully Exercised Its Police Power. .......... 26

A. The criminal seizure of property pursuant to a search warrant is a police power exception to the Takings Clause. .......... 27

B. Jenkins's claim that there is no federal police power exception to the Takings Clause is inconsistent with the holdings of this Court and other courts. .......... 33

C. A temporary physical seizure exercised pursuant to a valid search warrant does not automatically require compensation. .......... 35

D. Federal Rule of Criminal Procedure 41(g) provided Jenkins with the appropriate remedy. .......... 36

CONCLUSION .......... 40

# TABLE OF AUTHORITIES

## CASES

Aerolineas Argentinas v. United States,
77 F.3d 1564 (Fed. Cir. 1996) .......... 11, 22, 23

Acadia Technology v. United States,
458 F.3d 1327 (Fed. Cir. 2006) .......... 27, 28, 30, 34

Almanza v. United States,
935 F.3d 1332 (Fed. Cir. 2019) .......... 20

AmeriSource Corp. v. United States,
525 F.3d 1149 (Fed. Cir. 2008) .......... *passim*

Arkansas Game & Fish Comm'n v. United States,
568 U.S. 23 (2012) .......... 32

Bacchus v. United States,
No. 12-887C, 2013 WL 1831582, at *2 n.2 (Fed. Cl. May 1, 2013) .......... 37

Bennis v. Michigan,
516 U.S. 442 (1996) .......... 27, 29

Blueport Co., LLC v. United States,
533 F.3d 1374 (Fed. Cir. 2008) .......... 12, 13

Boeing Co. v. United States,
968 F.3d 1371 (Fed. Cir. 2020) .......... 16, 17, 22

Bowman v. United States,
35 Fed. Cl. 397 (1996) .......... 22

Brown v. United States,
35 Fed. Cl. 258 (1996) .......... 14

Carter v. United States,
62 Fed. Cl. 365 (2004) .......... 39

Cedar Point Nursery v. Hassid,
141 S. Ct. 2063 (2013) ... 32, 33

Collins v. United States,
67 F.3d 284 (Fed. Cir. 1995) ... 15

Crocker v. United States,
125 F.3d 1475 (Fed. Cir. 1997) ... 15, 16

Delano Farms Co. v. Cal. Table Grape Comm'n,
655 F.3d 1337 (Fed. Cir. 2011) ... 11

Duszak v. United States,
58 Fed. Cl. 518 (2003) ... 39

Earnest v. United States,
33 Fed. Cl. 341 (1995) ... 14

Eastport S.S. Corp. v. United States,
372 F.2d 1002 (Ct. Cl. 1967) ... *passim*

Fisher v. United States,
402 F.3d 1167 (Fed. Cir. 2005) ... 13

Forshey v. Principi,
284 F.3d 1335 (Fed. Cir. 2002) ... 20

Garcia Carranza v. United States,
67 Fed. Cl. 106 (2006) ... 38

Golden Bridge Technology, Inc. v. Nokia, Inc.,
527 F.3d 1318 (Fed. Cir. 2008) ... 20

Halo Elecs., Inc. v. Pulse Elecs., Inc.,
769 F.3d 1371 (Fed. Cir. 2014) ... 11

Heagy v. United States,
12 Cl. Ct. 694 (1987) ... 15

Hormel v. Helvering,
312 U.S. 552 (1941) ........................................................................ 19

Horne v. Dep't of Agric.,
569 U.S. 513, 528 (2013) ("Horne I") ........................................................ 37

Horne v. Dep't of Agric.,
576 U.S. 350 (2015) ("Horne II") ............................................................ 32

J & L Janitorial Serv., Inc. v. United States,
231 Ct. Cl. 837 (1982) ....................................................................... 15

Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.,
525 F.3d 1299 (Fed. Cir. 2008) .............................................................. 13

Kam-Almaz v. United States,
682 F.3d 1364 (Fed. Cir. 2012) ......................................... 28, 30, 34, 35

Karuk Tribe of Cal. v. Ammon,
209 F.3d 1366 (Fed. Cir. 2000). ............................................................. 26

Khan v. United States,
201 F.3d 1375 (Fed. Cir. 2000) ...................................................... 13, 14

Knick v. Twp. of Scott,
139 S. Ct. 2162 (2019) ...................................................................... 32

Lane v. Pena,
518 U.S. 187 (1996) ......................................................................... 12

LeBlanc v. United States,
50 F.3d 1025 (Fed. Cir. 1995) .................................................. 14, 15, 16

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) ............................................................. 12

Montalvo v. United States,
231 Ct. Cl. 980 (1982) ....................................................................... 15

Murray v. United States,
817 F.2d 1580 (Fed. Cir. 1987) ........................................................ 14, 32

Ontario Power Generation, Inc. v. United States,
369 F.3d 1298 (Fed. Cir. 2004) ........................................................ 17

Phang v. United States,
87 Fed. Cl. 321 (2009) ........................................................ 36

Phu Mang Phang v. United States,
388 F. App’x 961 (Fed. Cir. 2010) ........................................................ 36

Piszel v. United States,
833 F.3d 1366 (Fed. Cir. 2016) ........................................................ 23, 24

Pitts v. United States,
228 F. Supp. 3d 412 (E.D. Pa. 2017) ........................................................ 38

Raines v. Safeco Ins. Co. of Am.,
637 F.3d 872 (8th Cir. 2011) ........................................................ 11

Ramos v. United States,
112 Fed. Cl. 79 (2013) ........................................................ 29, 31

Reid v. United States,
148 Fed. Cl. 503 (2020) ........................................................ 21, 24, 25

Rhaburn v. United States,
390 F. App’x 987 (Fed. Cir. 2010) ........................................................ 36

Roberts v. United States,
745 F.3d 1158 (Fed. Cir. 2014) ........................................................ 14

Schnell v. Dep’t of the Army,
605 F. App’x 974 (Fed. Cir. 2015) ........................................................ 20

Seay v. United States,
61 Fed. Cl. 32 (2004) ........................................................ *passim*

Shearin v. United States,
992 F.2d 1195 (Fed. Cir. 1993) .......... 11

Steward v. United States,
80 Fed. Cl. 540 (2008) .......... 29

Suess v. United States,
535 F.3d 1348 (Fed. Cir. 2008) .......... 11

Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency,
535 U.S. 302 (2002) .......... 32

Taylor v. McDonough,
3 F.4th 1351 (Fed. Cir. 2021) .......... 20

United States v. Bormes,
568 U.S. 6 (2012) .......... 13

United States v. Chambers,
192 F.3d 374 (3d Cir. 1999) .......... 38

United States v. Gen. Motors Corp.,
323 U.S. 373 (1945) .......... 32

United States v. Hall,
269 F.3d 940 (8th Cir. 2001) .......... 38, 39

United States v. Howard,
973 F.3d 892 (8th Cir. 2020) .......... 37, 38

United States v. King,
395 U.S. 1 (1969) .......... 12, 13

United States v. Mitchell,
463 U.S. 206 (1983) ("Mitchell II") .......... 12, 13

United States v. Navajo Nation,
556 U.S. 287 (2009) .......... 13

United States v. Romero,
No. 1:12-CR-224, 2013 WL 625338 (D.N.D. Feb. 20, 2013).........................28

United States v. Sineneng-Smith,
140 S. Ct. 1575 (2020)..........................................................................18

United States v. Testan,
424 U.S. 392 (1976)..........................................................................12, 13

United States v. Timley,
443 F.3d 615 (8th Cir. 2006)..................................................................38

United States v. White Mountain Apache Tribe,
537 U.S. 465 (2003)..........................................................................12, 14

Virgin Islands Port Auth. v. United States,
922 F.3d 1328 (Fed. Cir. 2019)..............................................................22

Virtue v. Creamery Package Mfg. Co.,
227 U.S. 8 (1913)..................................................................................19

White v. City of Greensboro,
408 F. Supp. 3d 677 (M.D.N.C. 2019).....................................................27

Wood v. Milyard,
566 U.S. 463 (2012)................................................................................19

Yuba Goldfields, Inc. v. United States,
723 F.2d 884 (Fed. Cir. 1983)................................................................32

Yufa v. TSI, Inc.,
600 F. App’x 747 (Fed. Cir. 2015)..........................................................20

## CONSTITUTIONAL AND STATUTORY AUTHORITIES

21 U.S.C. § 853 .......... 36

28 U.S.C. § 1295 .......... 1

28 U.S.C. § 1346 .......... *passim*

28 U.S.C. § 1491 .......... 12, 16

28 U.S.C. § 2522 .......... 1

Minn. Stat. Ann § 168B.06 .......... 6

## OTHER

21 C.F.R. § 1316.75(b) .......... 15, 16

Fed. R. Appellate P. 34 .......... xi

Fed. R. Civ. P. 8 .......... 18

Fed. R. Crim. P. 41 .......... *passim*

RCFC 12(b)(6) .......... 21

Veterans Benefits Act of 2002, Pub. L. No. 107-330 (2002) .......... 20

## STATEMENT OF RELATED CASES

There has been no other appeal in or from this case, and Appellee United States of America is not aware of any other pending case that will directly affect, or be directly affected by, the Court's decision in this case.

# **WAIVER OF ORAL ARGUMENT**

In accordance with Federal Rule of Appellate Procedure 34(a), the United States respectfully submits that oral argument is not necessary because this Court has authoritatively decided similar claims, and the facts and legal arguments are adequately presented in the briefs and on the record such that the Court would not be significantly aided by oral argument.

## JURISDICTIONAL STATEMENT

Plaintiff Brodrick Jenkins ("Jenkins") invoked the jurisdiction of the United States District Court for the District of North Dakota under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). The district court entered final judgment on November 2, 2021. Appx25.

Jurisdiction in this Court is based on 28 U.S.C. § 1295(a)(2). Jenkins filed a timely notice of appeal to the United States Court of Appeals for the Eighth Circuit on December 6, 2021. Appx177-183. This Court has exclusive jurisdiction over appeals from Little Tucker Act actions. 28 U.S.C. § 1295(a)(2). The United States therefore moved to dismiss Jenkins's appeal in the Eighth Circuit for lack of jurisdiction. The Eighth Circuit instead transferred Jenkins's appeal to this Court on January 12, 2022. See 28 U.S.C. § 2522; Appx184.

# INTRODUCTION

Jenkins seeks compensation for two vehicles of which he was not the registered owner and that the United States did not forfeit or sell. The United States can be sued if and only if it consents to the terms of the suit, and Jenkins has failed to articulate any viable waiver of that sovereign immunity for his Fifth Amendment Due Process claims, and his Takings Clause claims fail to state a claim upon which relief can be granted. Jenkins brings this appeal upon a misunderstanding of facts and misinterpretation of the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and Fifth Amendment jurisprudence.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly held that Jenkins could not assert a compensable claim arising from his Fifth Amendment Due Process claim and properly found it did not have subject matter jurisdiction to entertain such a claim under the Little Tucker Act.

2. Whether the district court correctly held that Jenkins could not state a claim upon which relief could be granted for his Fifth Amendment Takings Clause allegation.

## STATEMENT OF THE CASE

On April 10, 2013, Jenkins pleaded guilty to conspiracy to possess with intent to distribute and distribute controlled substances in a sixteen-defendant criminal matter. Appx02. On October 31, 2013, Jenkins was sentenced to 252 months of imprisonment. Appx02.

During the investigation of Jenkins's crimes, Drug Enforcement Administration ("DEA") agents seized, among other items, $2,500 in United States currency, and two vehicles. Appx90. Both cars were towed from 527 Blaire in St. Paul, Minnesota and impounded at Twin Cities Transport and Recovery ("Impound Lot"). Appx91.

On October 21, 2013, the Bureau of Criminal Apprehension for the State of Minnesota ("BCA") released holds on two vehicles: a 1987 Oldsmobile Cutlass Supreme Brougham (the "1987 Oldsmobile") with the license plate 416 HXU and a Vehicle Identification Number of 1G3GM11Y3HP308778, and a 2001 Chevrolet Tahoe LT (the "2001 Tahoe") with the license plate number 426 JHA and a Vehicle Identification Number of 1GNEK13T91J187432. Appx90. Stephanie Buchanan, Jenkins's mother and co-defendant in the underlying criminal case, was the registered owner of both the 1987 Oldsmobile and 2001 Tahoe. Appx91. On October 21, 2013, the day the BCA released the vehicles, the Impound Lot sent a letter to Ms. Buchanan via first class mail notifying her that the 1987 Oldsmobile

was available to be reclaimed, notified her of the current balance, informed her charges would continue to accrue, and that she could reclaim the vehicle upon payment of the towing and storage charges. Appx91; Appx107. Neither Ms. Buchanan, nor anyone acting on her behalf, reclaimed the 1987 Oldsmobile or paid the towing and storage charges. Appx91.

On February 12, 2014, a Final Notice letter regarding the 1987 Oldsmobile was sent to Ms. Buchanan. Appx91. This letter explained that "[f]ailure to exercise your right to reclaim the vehicle and contents within 10 days shall be a waiver of you of all right, title, and interest in the vehicle and consent to the sale of the vehicle and its contents." Appx91. After the Impound Lot sent the Final Notice letter, neither Ms. Buchanan, nor anyone acting on her behalf, reclaimed the 1987 Oldsmobile or paid the towing and storage charges. Appx91.

On October 21, 2013, the day the BCA released the cars, the Impound Lot also sent a letter to Ms. Buchanan via first class mail notifying her the 2001 Tahoe was available to be reclaimed upon payment of the towing and storage charges. Appx91. Neither Ms. Buchanan, nor anyone acting on her behalf, reclaimed the 2001 Tahoe or paid the towing and storage charges. Appx91.

On February 12, 2014, a Final Notice letter regarding the 2001 Tahoe was sent to Ms. Buchanan. Appx91. This letter explained that "[f]ailure to exercise your right to reclaim the vehicle and contents within 10 days shall be a waiver of

you of all right, title, and interest in the vehicle and consent to the sale of the vehicle and its contents." Appx91-92. After the Impound Lot sent the Final Notice letter, neither Ms. Buchanan, nor anyone acting on her behalf, reclaimed the 2001 Tahoe or paid the towing and storage charges. Appx92.

The Impound Lot complied with the Minnesota statute governing notice of impounded vehicles, Minn. Stat. Ann. § 168B.06. Section 168B.06 has several key provisions, all of which were followed by the Impound Lot. The statute specifically states that "[t]he notice shall be sent by mail to the registered owner, if any, of an impounded vehicle and to all readily identifiable lienholders of record." Id. The statute also provides that "the unit of government or the impound lot operator" shall provide the notice. Id. (emphasis added). Thus, if the impound lot operator provides notice, as the Impound Lot did here, there is no requirement that the government also provide notice. See id.

The Impound Lot sold the 2001 Tahoe on May 9, 2014 and sold the 1987 Oldsmobile on May 12, 2014. Appx92. The Impound Lot sold the 2001 Chevy Tahoe for $1,500 and the 1987 Oldsmobile Cutlass for $2,970. Appx56. Pursuant to Minnesota Statute 168B.08 Subd. 4, as a nonpublic impound lot, the Impound Lot retained all proceeds from the sale. From the time the vehicles were searched on October 24, 2012, until the day the BCA released the holds and transferred possession to the Impound Lot on October 21, 2013, it was less than one year.

It is now disputed whether law enforcement or the Impound Lot informed Jenkins the vehicles were released from custody and available to be reclaimed. Appx90. In prior briefing in Jenkins's underlying criminal case, Jenkins conceded he received such notice: "When I was informed to go pick-up [sic] both motor vehicles, numerous items that were inside the vehicles were there, however, Petitioner's wallet containing the two thousand five hundred dollars was missing." Appx92. In any event, Jenkins did not reclaim the vehicles registered to Stephanie Buchanan. Appx92. Jenkins's filings in this matter now suggest that he was not informed that the vehicles were available to be reclaimed.

After filing his motion under Rule 41(g) of the Federal Rules of Criminal Procedure, the district court denied Jenkins's motion because he did not meet his burden under Rule 41(g) and the United States was not in possession of the vehicles. Appx52-53. Jenkins initiated this civil Little Tucker Act action. The district court granted Jenkins's in forma pauperis motion and appointed counsel, who in turn filed a supplement to Jenkins's Complaint. Appx52.

Under a liberal read of Jenkins's Complaint, together with his Supplemental Complaint, Jenkins alleged a constitutional violation of an uncompensated taking under the Fifth Amendment, and a due process violation for failing to notify Jenkins the vehicles were available for pick up. Appx55. Jenkins also argued he was entitled to relief under Rule 41(g) of the Federal Rules of Criminal Procedure

if the vehicles were in possession of the government. Appx54. The United States answered, asserting Jenkins was not entitled to any relief under his claimed theories. Appx66.

Jenkins conceded to the district court that the seizure of the two vehicles pursuant to a warrant was an exercise of the government's police power. Appx166. Jenkins now argues that the legal seizure of these vehicles was a physical appropriation for which compensation is due. Appellant's Brief (corrected) ("Appellant's Br.") at 20. However, there is no case law that supports such a position, and a timeline of events establishes when the government did and did not have custody of the vehicles:

- October 23, 2012: Search warrants were obtained for the 2001 Tahoe and 1987 Oldsmobile. Appx169.
- October 24, 2012: Search warrants were served on vehicles while in the Impound Lot. Appx169.
- April 10, 2013: Jenkins pleaded guilty to conspiracy to possess with intent to distribute controlled substances. Appx169.
- October 21, 2013: Minnesota BCA released holds on the two vehicles. Appx169. Thereafter, the 2001 Tahoe and 1987 Oldsmobile were in the custody of the Impound Lot.

- October 21, 2013: the Impound Lot sent a letter to the registered owner of the 2001 Tahoe and 1987 Oldsmobile. Appx169.
- October 31, 2013: Jenkins was sentenced to 252 months' imprisonment. Appx169.
- February 12, 2014: The Impound Lot sent a final notice letter to the registered owner of the 2001 Tahoe and 1987 Oldsmobile, which stated, "[f]ailure to exercise your right to reclaim the vehicle[s] and contents within 10 days shall be deemed a waiver by you of all right, title, and interest in the vehicle[s] and consent to the sale of the vehicle[s] and [their] contents." Appx169.
- May 2014: The Impound Lot sold the 2001 Tahoe and 1987 Oldsmobile. Appx169.

## SUMMARY OF THE ARGUMENT

1. There is no waiver of sovereign immunity under the Little Tucker Act for any claims arising from a constitutional right, statute, or regulation that is not "money mandating." The United States can only be sued under the terms Congress has set forth, and the Little Tucker Act creates no separate, substantive right for recovery for alleged due process violations. Jenkins failed to raise an illegal exaction claim in the district court and this Court should decline to entertain this new theory. Moreover, even if this Court did consider Jenkins's illegal exaction claim on the merits, it should fail because he cannot establish that money was taken or paid over to the government and that a provision of federal law was violated in doing so.

2. This Court should also affirm the district court's determination that Jenkins cannot establish relief under a Fifth Amendment Takings Clause violation. The Fifth Amendment provides that private property cannot be taken for public use without just compensation. This Court has identified certain exercises of police power that cannot constitute a taking as a matter of law, and property seized pursuant to a valid search warrant is one of those government actions. Indeed, this Court has repeatedly held that property seized pursuant to a valid search warrant is taken pursuant to a government's police power and does not trigger any requirement to compensate.

## STANDARD OF REVIEW

This Court's precedent applies to the Tucker Act's and Little Tucker Act's grant of exclusive appellate jurisdiction. Delano Farms Co. v. Cal. Table Grape Comm'n, 655 F.3d 1337, 1343 (Fed. Cir. 2011). The law of the originating regional circuit governs for all other issues. Halo Elecs., Inc. v. Pulse Elecs., Inc., 769 F.3d 1371, 1377 (Fed. Cir. 2014).

Sovereign immunity is a question of subject matter jurisdiction that receives "plenary review on appeal." Aerolineas Argentinas v. United States, 77 F.3d 1564, 1572 (Fed. Cir. 1996). "In deciding whether there is subject matter jurisdiction, the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings." Id. (citing Shearin v. United States, 992 F.2d 1195, 1195–96 (Fed. Cir. 1993)).

Summary judgment decisions are reviewed de novo. Raines v. Safeco Ins. Co. of Am., 637 F.3d 872, 874-75 (8th Cir. 2011). Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Suess v. United States, 535 F.3d 1348, 1359 (Fed. Cir. 2008).

## ARGUMENT

### I. Jenkins Did Not Assert a Compensable Claim under the Fifth Amendment Due Process Clause and the District Court Did Not Have Jurisdiction to Entertain Such a Claim under the Little Tucker Act.

The United States, as sovereign, cannot be sued without its consent, and the terms of its consent define the court's jurisdiction. United States v. Testan, 424 U.S. 392, 399 (1976). The terms of the consent to be sued may not be inferred but must be "unequivocally expressed." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); United States v. King, 395 U.S. 1, 4 (1969); Blueport Co., LLC v. United States, 533 F.3d 1374, 1378 (Fed. Cir. 2008). A waiver of sovereign immunity is strictly construed in favor of the sovereign. Lane v. Pena, 518 U.S. 187, 192 (1996); Martinez v. United States, 333 F.3d 1295, 1306 (Fed. Cir. 2003) (en banc).

The Tucker Act waives sovereign immunity, and confers jurisdiction on the Court of Federal Claims, for claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); United States v. Mitchell, 463 U.S. 206, 212 (1983) ("Mitchell II"). The Little Tucker Act allows federal district courts to entertain the same suits against the United States for claims of less than $10,000. 28 U.S.C. § 1346(a)(2). However, "[n]ot every claim

invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act . . .. The claim must be one for money damages against the United States." Id. at 216; King, 395 U.S. at 2–3.

The Tucker Act contains only a limited waiver of sovereign immunity for damages against the United States, if, and only if, a plaintiff can point to a substantive right warranting money damages. See 28 U.S.C. § 1346(a); see also Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008). The Tucker Act itself, however, "does not create any substantive right enforceable against the United States for money damages[;]" "[a] substantive right must be found in some other source of law." Mitchell II, 463 U.S. at 216–17 (citation omitted); see United States v. Bormes, 568 U.S. 6, 16–17 (2012). In the parlance of Tucker Act jurisprudence, the source of law relied upon must be "money-mandating." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005); Blueport, 533 F.3d at 1383.

To be money-mandating, the source of law relied upon "need not explicitly provide that the right or duty it creates is enforceable through a suit for damages, but it triggers liability only if it 'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. 287, 290 (2009) (citing Testan, 424 U.S. at 400 (quoting Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1009 (Ct. Cl. 1967) (en banc))); see also Khan v.

United States, 201 F.3d 1375, 1377 (Fed. Cir. 2000) ("[T]o invoke jurisdiction under the Tucker Act, a plaintiff must identify a contractual relationship, constitutional provision, statute, or regulation that provides a substantive right to money damages.")(citation omitted).

This standard has been referred to as the "fair interpretation" rule. E.g., White Mountain Apache Tribe, 537 U.S. at 472. In this regard, "[i]t is enough 'that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages.'" Roberts v. United States, 745 F.3d 1158, 1162 (Fed. Cir. 2014) (quoting White Mountain Apache Tribe, 537 U.S. at 473).

### A. The United States has not waived its sovereign immunity to permit Jenkins's Due Process claims because the Fifth Amendment Due Process Clause is not "money-mandating."

The district court correctly determined that Jenkins failed to ground his Due Process claims on a substantive right that gave rise to money damages, and properly dismissed such claim on that basis. It is settled that the remedy for violations of the Due Process Clause of the Fifth Amendment or the Search and Seizure Clause of the Fourth Amendment is not the payment of money damages. Brown v. United States, 35 Fed. Cl. 258, 266 (1996) (Fourth Amendment) (citing Murray v. United States, 817 F.2d 1580, 1582–83 (Fed. Cir. 1987); Earnest v. United States, 33 Fed. Cl. 341, 344 (1995)); LeBlanc v. United States, 50 F.3d

1025, 1028 (Fed. Cir. 1995) (Due Process); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir. 1995) (Due Process); Heagy v. United States, 12 Cl. Ct. 694, 698 (1987) (Due Process) (citing Montalvo v. United States, 231 Ct. Cl. 980, 982–83 (1982); J & L Janitorial Serv., Inc. v. United States, 231 Ct. Cl. 837, 838 (1982)).

Because claims for violation of these provisions do not lead to the payment of money damages, neither this court nor the district courts may afford a litigant relief under the Tucker Act. The allegations in the complaint based on these constitutional provisions were properly dismissed for lack of subject matter jurisdiction.

This Court's holding in Crocker v. United States, 125 F.3d 1475 (Fed. Cir. 1997), illustrates why the lower court properly held it lacked jurisdiction over Jenkins's Due Process claims. See id. at 1476. In Crocker, the Mississippi Sheriff's Department seized currency and bonds from the plaintiff and her husband during a drug investigation. Id. at 1475. The Drug Enforcement Agency received the currency and bonds so it could institute forfeiture proceedings, which it did in accordance with 21 C.F.R. § 1316.75(b). Id. The plaintiff filed suit claiming a due process violation for seizing the bonds and requested an award of money damages. Id. at 1476. Affirming the lower court, this Court held it did not have subject matter jurisdiction to entertain a due process violation because sovereign immunity is waived "only when a substantive right to money damages is otherwise

provided." Id. A claim arising from an alleged due process violation does not meet this jurisdictional requirement. Id. (citing LeBlanc, 50 F.3d at 1028).

Jenkins's cases mirrors Crocker in important ways and should reach the same result. To the extent Jenkins claims a due process violation for the seizure or the Impound Lot's sale of the car, it must fail for want of jurisdiction because the Fifth Amendment Due Process Clause does not provide compensatory relief for Jenkins under the Little Tucker Act. See Crocker, 125 F.3d at 1476.

**B. Jenkins's illegal exaction claim is barred by his failure to raise it below.**

Apparently realizing the claim Jenkins's previous counsel advanced below did not support a claim for damages under the Little Tucker Act, Jenkins now advances a new claim based on the theory of illegal exaction. Jenkins's argument on appeal faces a significant procedural hurdle because an illegal exaction claim was never raised in the district court. Jenkins did not assert this claim below, and it is therefore not properly before this Court.

Among the types of claims that have long been identified as cognizable under the Tucker Act, 28 U.S.C. § 1491(a), and by extension, the Little Tucker Act, 28 U.S.C. § 1346(a)(2), are: contractual claims, illegal-exaction claims, and money-mandating-statute claims. See Boeing Co. v. United States, 968 F.3d 1371, 1382–83 (Fed. Cir. 2020). As this Court and its predecessor have described, "the

non-contractual claims we consider under Section 1491 can be divided into two somewhat overlapping classes—those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum [illegal-exaction claims]; and those demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury [money-mandating-statute claims].” Id. (quoting Eastport, 372 F.2d at 1007); see also Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004) (“underlying monetary claims are of three types”).

Jenkins’s pro se Complaint, together with the Supplemental Complaint filed by his appointed counsel, alleged an uncompensated takings claim and a failure to notify due process claim, both arising under the Fifth Amendment. Jenkins asserted he was not notified that he could retrieve the vehicles that were seized pursuant to a search warrant, and the vehicles were sold at auction. See Appx35; Appx52. Jenkins sought money damages for a governmental action—the failure to return property. See Boeing, 968 F.3d at 1384. This type of claim requires a “money-mandating” statute, or a claim validly presented under the Fifth Amendment Takings Clause and is thus a “money-mandating-statute claim.” See id. at 1382.

But an illegal exaction claim, such as the one now embraced by Jenkins, involves recovery of money paid over to the United States, directly or in effect, in violation of a specified provision of the Constitution, statute or regulation. See

Eastport, 372 F.2d at 1007–08. It thus requires an illegal disbursement of money or property to the United States or an expenditure by the claimant related to a governmental act. Id. (describing two kinds of illegal exaction claims). Jenkins alleged no such exaction in the district court, and at no point below did he—either pro se or through his appointed counsel—advance the illegal-exaction claim now asserted on appeal. Cf. United States v. Sineneng-Smith, 140 S. Ct. 1575, 1579 (2020) (explaining that "our adversarial system . . . is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief" (quotation marks and brackets omitted)). Jenkins did not plead the first element below—that the government's seizure of the vehicles was illegal. Rather, he alleged the failure to return property lawfully seized violated his due process rights. This is the type of claim that requires a "money-mandating" statute and is thus a "money-mandating-statute claim," not an illegal exaction claim.

Jenkins appears to recognize this fatal error, arguing in a footnote that, by citing below unspecified case law that mentions illegal exaction, Jenkins may raise his new claim on appeal. (Appellant's Br. at 14 n.3.) But a passing reference to case law that mentions a type of claim not pleaded below does not satisfy the generous pleading requirements of Federal Rule of Civil Procedure 8. See Fed. R. Civ. P. 8(a)(2) (requiring a claimant to provide a "short and plain statement of the

claim showing that the pleader is entitled to relief"). Because Jenkins did not raise this claim in the district court, it is not properly before this Court.

### C. Prudential considerations should foreclose this Court from considering Jenkins's exaction claim.

Even if this Court views Jenkins's newly advanced illegal exaction claim as an alternative theory raised for the first time on appeal, as opposed to a different claim, it should decline to entertain it as a prudential matter. It is a cardinal rule that appellate courts generally do not rule on issues not raised below. See Wood v. Milyard, 566 U.S. 463, 473–74 (2012) ("For good reason, appellate courts ordinarily abstain from entertaining issues that have not been raised and preserved."); Hormel v. Helvering, 312 U.S. 552, 556 (1941) (noting the rule prohibiting considering on appeal an argument not raised to the district court ensures that "parties may have the opportunity to offer all the evidence they believe relevant to the issues . . . [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence."); Virtue v. Creamery Package Mfg. Co., 227 U.S. 8, 33 (1913) (refusing to consider an appellant's theory presented for the first time on appeal).

This Court has long followed Hormel and held that "[w]ith a few notable exceptions, such as some jurisdictional matters, appellate courts do not consider a

party's new theories, lodged first on appeal." Forshey v. Principi, 284 F.3d 1335, 1354 (Fed. Cir. 2002) (en banc), superseded by statute on other grounds by Veterans Benefits Act of 2002, Pub. L. No. 107-330, § 402(a), 116 Stat. 2820, 2832 (2002), as stated in Taylor v. McDonough, 3 F.4th 1351, 1363 n.7 (Fed. Cir. 2021). This Court recognizes very limited exceptions to that general rule, such as where there have been intervening legislative or jurisprudential changes, where the correct law was not raised below but the issue is properly before this Court, or where a party proceeded pro se in the lower court. Id.; Golden Bridge Technology, Inc. v. Nokia, Inc., 527 F.3d 1318, 1323 (Fed. Cir. 2008) ("In Forshey, this court articulated an exemplary set of limited circumstances in which hearing arguments for the first time on appeal is appropriate[.]"); see also Almanza v. United States, 935 F.3d 1332, 1338 (Fed. Cir. 2019) (stating the application of the correct law exception in Forshey requires the issue to be properly before the Court); Schnell v. Dep't of the Army, 605 F. App'x 974, 980 (Fed. Cir. 2015) (unpublished) ("Specifically, Forshey teaches 'a court of appeals may require less precision in the presentation of the issue to the lower court [by a pro se litigant] than it demands of a litigant represented by counsel.'") (quoting Forshey, 284 F.3d at 1357); Yufa v. TSI, Inc., 600 F. App'x 747, 753 (Fed. Cir. 2015) (unpublished) (recognizing this Court in Forshey "articulated a set of circumstances in which hearing arguments for the first time is appropriate").

None of these exceptions apply here. Jenkins has cited no intervening legislative or jurisprudential change in the law to justify raising an illegal exaction theory for the first time on appeal. Although Jenkins initiated the action below pro se, the district court appointed counsel for him. His counsel filed a Supplemental Complaint clarifying the claims and then litigated the claims on Jenkins's behalf. Neither Jenkins pro se nor his counsel below raised illegal exaction as a basis for Jenkins's claims.

**D. Jenkins's illegal exaction claim also fails on the merits.**

Jenkins now contends his due process claim is really one of "illegal exaction." The United States submits, as outlined above, that an illegal exaction claim was not raised in the district court, and it cannot be raised for the first time in this appeal. If this Court disagrees, remand to the district court is still unnecessary because the purported illegal exaction theory fails to state a claim. Reid v. United States, 148 Fed. Cl. 503, 515 (2020) ("A claim that survives a jurisdictional challenge remains subject to dismissal under RCFC 12(b)(6) if it does not provide a basis for the court to grant relief.").

"One way an illegal exaction occurs," this Court has stated, "is when the 'plaintiff has paid money over to the Government, [directly or in effect,] and seeks return of all or part of that sum' that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'"

Boeing Co., 968 F.3d at 1383 (quoting Virgin Islands Port Auth. v. United States, 922 F.3d 1328, 1333 (Fed. Cir. 2019) in turn quoting Eastport, 372 F.2d at 1007 (internal quotations omitted)).

To state a claim for illegal exaction requires two essential elements: (1) that money was taken or paid over to the government, directly or in effect, and (2) that a provision of federal law was violated in doing so. See Bowman v. United States, 35 Fed. Cl. 397, 401 (1996) (involving claim for return of proceeds obtained by the United States from the sale of criminal defendant's forfeited property); see also Boeing, 968 F.3d at 1383 ("to establish Tucker Act jurisdiction for an illegal exaction claim, a party that has paid money over to the government and seeks its return must make a non-frivolous allegation that the government, in obtaining the money, has violated the Constitution, a statute, or a regulation"). Both elements are missing here.

In Boeing, an illegal exaction claim was stated where the Defense Contract Management Agency required payment of more than one million dollars from the manufacturer due to alleged increased contractual costs to the government based on changes to Boeing's cost accounting practices. Boeing, 968 F.3d at 1376, 1382. In Aerolineas, a claim for illegal exaction was held to exist where the government required the airline to make payments to a third-party for the housing and care of certain foreign passengers that arrived in the United States. See Aerolineas, 77

F.3d at 1575–77. In Eastport, the court reaffirmed that a claim for illegal exaction existed where the Maritime Commission required a monetary payment from the applicant before approving an application to transfer ownership of a vessel but concluded that no recovery could be had for business damages that were incurred due to the Commission's delay in approving the application. Eastport, 372 F.2d at 1006–07. Not one of these cases involved facts similar to the case at bar.

After Jenkins's criminal case was concluded, the DEA released a hold on the vehicles, which were evidence seized and retained during the investigation and prosecution of his drug trafficking offenses. The vehicles, which Jenkins claims an ownership interest in, were made available for return by the Impound Lot where the vehicles were held. Following Minnesota state law, the Impound Lot notified the registered owner, Jenkins's mother, that the vehicles could be retrieved and advised her of the costs associated with retrieval. A second and final notice was sent to the registered owner several months later when the vehicles had still not been retrieved. Thereafter, the Impound Lot sold the vehicles and the funds obtained were used to cover the costs of the impound.

Contrary to the cases above, the United States was not paid any money directly or in effect. The holding in Piszel v. United States, 833 F.3d 1366, 1382 (Fed. Cir. 2016) directs that there is no viable illegal exaction claim here because when there is no payment, there can be no illegal exaction:

> Mr. Piszel does not allege that he paid any money to the government. Rather, his theory is that because the government (as conservator) caused Freddie Mac not to pay him his severance payments, his not receiving severance was in essence a payment sufficient to amount to an illegal exaction. **Even assuming that an illegal exaction claim can involve payments to non-governmental entities, there was no exaction here because there was no payment**.

Id. (emphasis added).

Jenkins attempts to skirt this important distinction by arguing that the Impound Lot was in effect an agent for the United States. Appellant's Br. at 23–24. This is a clever argument to raise for the first time on appeal, however, it still misses the mark. A waiver of sovereign immunity by the United States may not be inferred, but rather must be unequivocally expressed. Reid, 148 Fed. Cl. at 515. In Reid, the court of claims recognized that the United States may be subject to claims for the actions of a third party, when that third party is the government's agent. Id. at 520. It is hornbook law that an essential element of the agency relationship is the principal's right to control the actions of the agent. Id. But there are no allegations or facts from which it could be unequivocally concluded that the United States had the right to control the Impound Lot's actions.

Once the DEA released the holds on the vehicles, near the conclusion of the federal prosecution, the 2001 Tahoe and the 1987 Oldsmobile were in the custody of the Impound Lot owner. The Impound Lot followed Minnesota's state law notice requirements when it provided notice to Stephanie Buchanan, the registered

owner of the vehicles, that they could be retrieved. There is no allegation or information supporting that the United States directed the Impound Lot, nor did the United States receive any direct or indirect monetary benefit from the eventual sale of the vehicles when they were not retrieved.

Jenkins and his counsel below had the obligation to allege facts that would establish an agency relationship, they did not do so. And newly appointed counsel for this appeal cannot and has not done so now. Thus, Jenkins's agency theory is legally insufficient to state an illegal exaction claim against the United States. See Reid, 148 Fed. Cl. at 521 (concluding plaintiffs had not alleged facts establishing the Treasury exercised the necessary control to establish an agency relationship over the Federal Housing Finance Agency-acting as conservator for Freddie Mac (FHFA-C)).

For these reasons this Court should reject Jenkins's newly embraced argument that his violation of Due Process claim is really one for illegal exaction. The district court's order dismissing the Due Process claim for lack of jurisdiction because the United States had not waived sovereign immunity for such claims should be affirmed.

## II. There Was no Fifth Amendment Takings Because the Government Lawfully Exercised its Police Power.

Jenkins's remaining claim, which was primarily advanced below, is a Takings Claim. The Fifth Amendment Takings Clause provides that no private property shall "be taken for public use, without just compensation." U.S. Const. amend. V. Fifth Amendment Takings Clause claims require a two-step analysis. See Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366, 1374 (Fed. Cir. 2000). "First, a court determines whether the plaintiff possesses a valid interest in the property affected by the governmental action, i.e., whether the plaintiff possessed a 'stick in the bundle of property rights.'" Id. Next, the court determines "whether the governmental action at issue constituted a taking of that 'stick.'" Id.

The lower court found Jenkins had a cognizable property interest in the two vehicles satisfying the first element, but properly determined that the "police power" exception to the Takings Clause foreclosed any recovery to him. Appx08; Appx16. This Court should affirm as courts have repeatedly held "[i]tems properly seized by the government under its police power are not seized for 'public use' within the meaning of the Fifth Amendment." Seay v. United States, 61 Fed. Cl. 32, 35 (2004) (concluding "the retention of the plaintiff's belongings during the criminal investigation does not amount to a taking by the government.").

### A. The criminal seizure of property pursuant to a search warrant is a police power exception to the Takings Clause.

This Court has very plainly stated that "[t]he government's seizure of property to enforce criminal laws is a traditional exercise of the police power that does not constitute a 'public use.'" AmeriSource Corp. v. United States, 525 F.3d 1149, 1153 (Fed. Cir. 2008). An authorized seizure of property pursuant to the United States' police power is not a compensable takings in the context of the Takings Clause. Id. Fifth Amendment jurisprudence commands that Jenkins is not entitled to relief because the vehicles were lawfully seized pursuant to a search warrant and retained during his federal criminal prosecution for drug trafficking. See Bennis v. Michigan, 516 U.S. 442, 452 (1996) (holding "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."); Acadia Technology v. United States, 458 F.3d 1327, 1131 (Fed. Cir. 2006) ("When property has been seized pursuant to the criminal laws or subjected to *in rem* forfeiture proceedings, such deprivations are not "takings" for which the owner is entitled to compensation."); White v. City of Greensboro, 408 F. Supp. 3d 677, 703 (M.D.N.C. 2019) (holding that property seized during the execution of a search warrant was not the basis of a Takings Clause claim and that "when law enforcement officials exercise their authority to

'seize [or] impound [property] ... or otherwise enforce criminal law', law enforcement exercises its police power, not its power of eminent domain") (citation omitted); United States v. Romero, No. 1:12-CR-224, 2013 WL 625338, at *5 (D.N.D. Feb. 20, 2013) (finding "neither seizure of property for use in a criminal prosecution nor forfeiture of such property is a compensable taking under the Fifth Amendment").

Here, the vehicles were lawfully seized during the criminal investigation and held during the drug trafficking prosecution. Approximately ten days before Jenkins was sentenced, the criminal holds on the vehicles were released and that same day the Impound Lot notified the registered owner the vehicles could be retrieved. Courts have consistently held these types of property seizures by the United States do not constitute compensable takings under the Takings Clause. E.g., Kam-Almaz v. United States, 682 F.3d 1364, 1371 (Fed. Cir. 2012) ("Our precedent is clear: 'Property seized and retained pursuant to the police power is not taken for a "public use" in the context of the Takings Clause.'" (quoting AmeriSource Corp., 525 F.3d at 1153)).

This precedent has been firmly established in a long line of cases from this Court and the United States Court of Federal Claims. See Acadia, 458 F.3d 1327; AmeriSource Corp., 525 F.3d 1149; Kam-Almaz, 682 F.3d 1364; Seay, 61 Fed.

Cl. 32; Steward v. United States, 80 Fed. Cl. 540 (2008); Ramos v. United States, 112 Fed. Cl. 79 (2013).

A good example is AmeriSource Corp, 525 F.3d 1149, where the government seized a large amount of pharmaceuticals while executing a search warrant for a criminal investigation involving another company. Id. at 1150. AmeriSource, who supplied the pharmaceuticals, was not a target of the investigation and attempted to have the drugs returned, but the company did not receive the drugs until long after they had expired and were worthless. Id. at 1151. In affirming the lower court, this Court concluded "the government seized the pharmaceuticals in order to enforce criminal laws, a government action clearly within the bounds of the police power." Id. at 1153–54. The Court further stated that "so long as the government's exercise of authority was pursuant to some power other than eminent domain, then the plaintiff has failed to state a claim for compensation under the Fifth Amendment." Id. at 1154 (citing Bennis, 516 U.S. at 453).

Even though Amerisource was not a target of the investigation, and the drugs were never used at trial, no compensable taking occurred because "[o]nce the government has lawfully seized property to be used as evidence in a criminal prosecution, it has wide latitude to retain it so long as the investigation continues."

Id. Despite the seeming unfairness, the Court concluded no compensable taking occurred regardless of the effect on the property during its retention. Id.

Minimizing the holdings in cases like Kam-Almaz, AmeriSource, and Acadia, Jenkins argues for a different result because the vehicles were not returned to him. Appellant's Br. at 29–31. This is a distinction without a difference. Whether criminally seized property is returned in a worthless or nearly worthless condition, as happened in these cases, or not at all, as Jenkins alleges happened here, makes no difference under the police power exception to the Takings Clause. The government has inadvertently destroyed property held as evidence in a criminal prosecution and this Court has determined that because the property was lawfully seized pursuant to police power, there was no compensable taking under the Fifth Amendment. See Kam-Almaz, 682 F.3d at 1368-69 (no compensable taking where business records on a computer seized by the government were lost while in custody); Amerisource, 525 F.3d at 1154 (no compensable taking occurred where a third-party's pharmaceuticals were held for years and returned beyond their expiration date—rendering them worthless); Acadia, 458 F.3d at 1331–33 (no compensable taking for computer cooling fans held in custody for four years and reduced to scrap value upon their release); Seay, 61 Fed. Cl. at 35 (no compensable taking where property returned in a damaged and nearly worthless condition after having been seized by law enforcement).

The distinction proposed by Jenkins is not supported by case law, and was effectively rejected in Ramos, 112 Fed. Cl. 79. In Ramos, vehicles, jewels, electronics, and other assets were left with law enforcement authorities in the Dominican Republic after being seized in connection with a United States drug trafficking investigation. Id. at 81–82. The defendant, Ramos, was indicted on drug charges and later extradited to the United States for prosecution. Id. at 82. The United States did not seek forfeiture of the seized property and assets. Id. When Ramos sought return of the seized items, the Dominican Republic authorities informed him the property was "no longer traceable" and the property was never located. Id. at 82. Ramos sued the United States for damages. Id. Though Ramos's claim was barred by the statute of limitations, the court also held Ramos did not have a viable takings claim based on settled precedent. Id. at 85. "Because the property confiscated from Mr. Ramos was seized pursuant to lawful criminal proceedings and thus was not taken for public use, its loss, under the precedent of this circuit, cannot give rise to a takings claim." Id. at 86. So, the loss of property while held in the context of a criminal investigation, even without a forfeiture proceeding, is not a compensable takings claim. Id.

Contrary to this settled law, Jenkins argues "[t]here is no police-power exception that excuses the federal government from paying just compensation

here." Appellant's Br. at 21. This is simply incorrect as this Court's precedent amply demonstrates. Jenkins relies upon inapposite civil cases involving physical appropriations of property to support his argument. See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency, 535 U.S. 302 (2002) (involving a moratorium on land development); Yuba Goldfields, Inc. v. United States, 723 F.2d 884 (Fed. Cir. 1983) (involving the extraction of mineral interests, not the United States' police power); United States v. Gen. Motors Corp., 323 U.S. 373, 378 (1945) (condemnation case); Murray, 817 F.2d 1584 (involving a claim to redeem property following an IRS tax sale); Arkansas Game & Fish Comm'n v. United States, 568 U.S. 23 (2012) (involving a temporary taking of land for government-induced flooding); Knick v. Twp. of Scott, 139 S. Ct. 2162 (2019) (involving inverse condemnation); Cedar Point Nursery v. Hassid, 141 S. Ct. 2063 (2013) (challenging law requiring limited access by unions to an agricultural operations); Horne v. Dep't of Agric., 576 U.S. 350 (2015) ("Horne II") (involving regulations on raisin industry)[1]. Not one of these cases involves a lawful seizure of property to investigate and prosecute federal criminal offenses.

---

[1] The United States Supreme Court decision in Horne, 576 U.S. 350, which Jenkins argues "illustrates these foundational principles of takings jurisprudence," has no relation or discussion to an exercise of police power in the criminal context. In Horne, raisin farmers in California challenged the United States Department of Agriculture's policy of physically setting aside raisin crops in certain years for the government with the goal of maintaining an orderly market. Id. at 351.

The holding in Cedar Point Nursery actually provides further support to the United States' position here because the Court articulated that "many government-authorized physical invasions will not amount to takings because they are consistent with longstanding background restrictions on property rights." 141 S. Ct. at 2079. Property seized pursuant to a valid search warrant is analogous to the examples cited in Cedar Point Nursery that are not takings, such as entering property to effect an arrest. See id.

The district court's judgment dismissing Jenkins's Fifth Amendment takings claim should be affirmed because the complaint and supplemental complaint did not allege a compensable constitutional taking.

**B. Jenkins's claim that there is no federal police power exception to the Takings Clause is inconsistent with the holdings of this Court and other courts.**

Jenkins claims that the federal government does not enjoy a "police power" exception to the Takings Clause because the federal government does not have traditional police powers. Appellant's Br. at 34. The argument does not withstand even a cursory analysis as the United States' discussion above demonstrates. Courts have evaluated exercises of police power in the context of enforcing federal law and determined otherwise. In Seay, at issue was a search warrant executed by the United States Postal Inspection Service, a federal law enforcement agency. Seay, 61 Fed. Cl. at 33. The Court of Federal Claims determined that the

equipment seized by the federal agents was not a taking compensable by the Fifth Amendment because it was seized pursuant to a valid federal search warrant. See id.

This Court's holding in AmeriSource further undermines Jenkins's argument that the federal government does not enjoy a police power exception to the Takings Clause. See 525 F.3d at 1153. In AmeriSource, the seizure of the pharmaceutical drugs in question stemmed from a federal criminal investigation and this Court had no qualms recognizing the federal government's police power to seize the drugs pursuant to a search warrant and retain them during the entirety of the investigation and prosecution. See id. at 1150.

Before AmeriSource, this Court's holding in Acadia further confirmed that there is indeed a federal police power exception to a takings claim. Acadia, 458 F.3d at 1328. In Acadia, imported computer parts were seized by United States Customs and Border Protection pursuant to the Tariff Act. Id. at 1329. This Court held "[w]hen property has been seized pursuant to the criminal laws or subjected to in rem forfeiture proceedings, such deprivations are not 'takings' for which the owner is entitled to compensation." Id. at 1331.

More recently, this Court again affirmed a federal seizure by the United States Immigration and Customs Enforcement as an exception to a takings claim requiring compensation. See Kam-Almaz, 682 F.3d at 1366. In Kam-Almaz, the

items seized, a laptop with business software, were non-compensable takings as they had been seized pursuant to federal police power. Id. at 1372. There, Kam-Almaz attempted to distinguish his case in ways Jenkins tries now, arguing the government's seizure was not an exercise of its police power. Id. This Court plainly disagreed, noting "[l]awful seizures performed pursuant to such authority necessarily fall within the government's power to police the border." Id. at 1373. Jenkins's claim the United States does not enjoy a "police power" falling within an exception to the Takings Clause is refuted by these and other cases. The faulty contention should be rejected by this Court.

### C. A temporary physical seizure exercised pursuant to a valid search warrant does not automatically require compensation.

Jenkins admits that a temporary physical seizure pursuant to a valid search warrant does not constitute a compensable taking. Appellant's Br. at 29–33. The United States agrees. What Jenkins fails to recognize, however, is that each of the cases he cites have a striking similarity to his own matter: law enforcement obtained a search warrant, seized property pursuant to the search warrant, and forfeited or released the property when the criminal investigation or case were concluded.

That is precisely what happened here: in October 2012, the government obtained and executed search warrants upon the vehicles; the vehicles were held in

custody for approximately one-year during the prosecution of the drug trafficking case; in October 2013, just prior to Jenkins's sentencing, the government released the holds on the vehicles. The Impound Lot where the vehicles were temporarily stored then made the vehicles available to be retrieved by their registered owner. The temporary seizure of the vehicles was lawful and commensurate with the government's investigatory and prosecutorial needs for the evidence.

### D. Federal Rule of Criminal Procedure 41(g) provided Jenkins with the appropriate remedy.

Jenkins was not without an avenue for relief. Rule 41(g) of the Federal Rules of Criminal Procedure is the remedy by which a claimant may seek the return of non-forfeited property seized pursuant to the government's police power. See, e.g., Rhaburn v. United States, 390 F. App'x 987, 988–89 (Fed. Cir. 2010) (unpublished) ("The government did not dispute that it has retained the currency notwithstanding Mr. Rhaburn's request pursuant to 21 U.S.C. § 853. The Court of Federal Claims recognized that the allegations as pled may have remedy elsewhere, for 'individuals whose property has been seized by the government may pursue a due process remedy pursuant to Federal Rule of Criminal Procedure 41(g).'"); Phang v. United States, 87 Fed. Cl. 321, 327–28 (2009), aff'd sub nom, Phu Mang Phang v. United States, 388 F. App'x 961 (Fed. Cir. 2010) ("If Mr. Phang's property was never forfeited at all, then, as noted by the defendant, Rule

41(g) of the Federal Rules of Criminal Procedure provides Mr. Phang with the appropriate remedy."); see also Bacchus v. United States, No. 12-887C, 2013 WL 1831582, at *2 n.2 (Fed. Cl. May 1, 2013) ("Even if Mr. Bacchus' property-related claims were not barred by the six-year statute of limitations, Mr. Bacchus cannot state a claim based on an alleged illegal seizure or forfeiture of his property, in any event. Property seized under the government's police power is not 'taken' within the meaning of the Fifth Amendment. Mr. Bacchus' rights are limited to those provided for under Rule 41(g) of the Federal Rules of Criminal Procedure.") (internal citation omitted) (emphasis added)); see also Horne v. Dep't of Agric., 569 U.S. 513, 528 (2013) ("Horne I") (recognizing that, where a comprehensive remedial scheme exists, Congress may revoke Tucker Act jurisdiction for a takings claim)).

Rule 41(g) provides "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return" and "[t]he court must receive evidence on any factual issue necessary to decide the motion." Fed. R. Crim. P. 41(g). To succeed on a Rule 41(g) motion, Jenkins needed to show that he was lawfully entitled to possess the seized property and that the United States has or had the property. United States v. Howard, 973 F.3d 892, 894 (8th Cir. 2020). If a factual dispute exists "as to who has custody of the property or who is entitled to its possession arises, 'the court must hold a hearing

to determine those issues.'" Id. (quoting United States v. Timley, 443 F.3d 615, 625 (8th Cir. 2006)).

That the government is no longer in possession of the property does not moot a Rule 41(g) motion. United States v. Hall, 269 F.3d 940, 942 (8th Cir. 2001). In that circumstance, the district court must determine whether the government retains possession of the property and, if not, determine what happened to the property. It must hold an evidentiary hearing "on any disputed issue of fact necessary to the resolution of the motion." United States v. Chambers, 192 F.3d 374, 377–78 (3d Cir. 1999); see Pitts v. United States, 228 F. Supp. 3d 412, 417–20 (E.D. Pa. 2017) (providing an overview of Rule 41 proceedings).

Here, Jenkins filed a pro se Rule 41(g) motion seeking the return of property seized in connection with his criminal case. Appx02. The district court appointed the Office of the Federal Public Defender for the Districts of North and South Dakota to represent Jenkins. Appx02.

Jenkins failed to secure a final decision from the district court that may have supported a later claim under the Tucker Act or the Little Tucker Act. See Garcia Carranza v. United States, 67 Fed. Cl. 106, 111 (2006) ("In the context of seeking return of property seized at arrest, however, Plaintiff must first file a motion for return of property pursuant to Fed. R. Crim. P. 41(g) before invoking the jurisdiction of the United States Court of Federal Claims to assert a takings

claim"); Carter v. United States, 62 Fed. Cl. 365, 369 (2004) ("A party may have a valid takings claim in the event his property was seized by the Government as part of a criminal investigation and never forfeited or returned; however, this claim for just compensation is not ripe until the aggrieved party has availed himself of the procedures set forth in Rule 41(g) and obtained a final decision from the district court that entitles him to assert a takings claims." (emphasis added)); Duszak v. United States, 58 Fed. Cl. 518, 521 (2003) ("Until a plaintiff has availed herself of [Federal Rule of Criminal Procedure 41(g)] and obtained a final decision . . . the taking claim filed in this court is not ripe for decision."); see also Hall, 269 F.3d at 943 ("The court also retains equitable jurisdiction under Rule 41(e) [the predecessor to Rule 41(g)] to resolve issues of fact that may help to determine whether such an alternative claim [for money damages] is cognizable."). Namely, Jenkins failed to secure a final decision establishing his right to exclusive possession of the vehicles, ascertaining what notice Jenkins received regarding the vehicles, determining the value of the vehicles, or deciding if the sale of the vehicles produced a profit and to whom that profit went.

Jenkins's action and inaction may have contributed to this failure. Had Jenkins not masked his purported ownership of the vehicles by registering them in another's name, he would have received the legal notices from the Impound Lot to retrieve the vehicles. And had he sought return of this purported property in a

timely manner, he may have received it. He instead waited nearly four years after his criminal case concluded before seeking the return of the vehicles.

Rule 41(g) provided Jenkins the appropriate avenue for relief, and Jenkins did not secure a final decision from the district court that may support an alternative claim for money damages through those proceedings.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court to affirm the judgment of the district court, including its determination it did not have subject matter jurisdiction over Jenkins's Fifth Amendment Due Process claims and its ruling Jenkins failed to state a claim under the Fifth Amendment Takings Clause.

JENNIFER KLEMETSRUD PUHL
United States Attorney

By: /s/ *Melissa Helen Burkland*
MELISSA HELEN BURKLAND
WI Bar Board ID No. 1071443
MEGAN A. HEALY
MN Bar ID 0387810
Assistant United States Attorneys
Quentin N. Burdick U.S. Courthouse
655 First Avenue North - Suite 250
Fargo, ND 58102-4932
(701) 297-7400

July 29, 2022

Attorneys for Appellee

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2022-1378

**Short Case Caption:** Jenkins v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 8,919 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ______ lines of text.
- [ ] the filing contains ______ pages / ______ words / ______ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ______).

Date: 7/29/2022

Signature: /s/ Melissa Helen Burkland

Name: Melissa Helen Burkland

Save for Filing