**No. 2022-1378**

# United States Court of Appeals for the Federal Circuit

BRODRICK JAMAR JENKINS,

*Plaintiff-Appellant*,

*v.*

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States District Court
for the District of North Dakota, No. 3:19-cv-00188-ARS

**REPLY BRIEF OF APPELLANT BRODRICK JAMAR JENKINS**

James Burnham
H. Hunter Bruton
*Counsel of Record*
Megan E. Ball
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
hbruton@jonesday.com

*Counsel for Appellant Brodrick Jamar Jenkins*

# CERTIFICATE OF INTEREST

Case No. 2022-1378

*Brodrick Jamar Jenkins v. United States*

Filing Party/Entity: Brodrick Jamar Jenkins

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: September 14, 2022 Signature: */s/ H. Hunter Bruton*

Name: H. Hunter Bruton

**1. Represented Entities** (Fed. Cir. R. 47.4(a)(1)) – Provide the full names of all entities represented by undersigned counsel in this case.

(a) Brodrick Jamar Jenkins

**2. Real Party in Interest** (Fed. Cir. R. 47.4(a)(2)) – Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None

**3. Parent Corporations and Stockholders** (Fed. Cir. R. 47.4(a)(3)) – Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Not Applicable

**4. Legal Representatives** – List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

**Federal Public Defender**: Christopher J. Lancaster

**5. Related Cases** – Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). *See also* Fed. Cir. R. 47.5(b).

None

**6. Organizational Victims and Bankruptcy Cases** – Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

Not Applicable

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .......... i

TABLE OF AUTHORITIES .......... v

REQUEST FOR ORAL ARGUMENT .......... x

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. THE UNITED STATES OWES JUST COMPENSATION FOR PHYSICALLY APPROPRIATING MR. JENKINS' PROPERTY .......... 2

A. The United States Physically Appropriated Mr. Jenkins' Property, Did Not Return It, and Did Not Provide Compensation .......... 4

1. The Takings Clause categorically requires just compensation here .......... 4

2. The lawfulness of the initial seizure does not excuse the United States' just-compensation obligation .......... 5

B. No "Police-Power" Exception Applies .......... 8

1. The United States cannot permanently dispossess Mr. Jenkins of his property without pursuing federal-forfeiture proceedings .......... 8

2. Supreme Court precedent forecloses the requested new "police-power" exception .......... 12

C. The United States Cannot Advance Its New, Meritless Rule 41(g) Argument .......... 16

1. Judicial estoppel and waiver bar the Rule 41(g) argument .......... 16

2. *Knick* and related precedent foreclose the Rule 41(g) argument .......... 17

## TABLE OF CONTENTS
(continued)

**Page**

3. Mr. Jenkins would prevail even under the United States' test ........ 19

II. THE LITTLE TUCKER ACT WAIVES SOVEREIGN IMMUNITY FOR MR. JENKINS' DUE-PROCESS CLAIM ........ 20

A. The Due-Process Claim Meets the Jurisdictional Requirements for an Illegal-Exaction Waiver ........ 21

1. Mr. Jenkins pled a due-process claim implicating the illegal-exaction waiver, which the undisputed record supports ........ 22

2. The United States' sole merits counterargument ignores precedent and distorts the record ........ 26

3. Money-mandating precedent does not alter the analysis ........ 29

B. The United States Cannot Evade a Jurisdictional Issue by Arguing Preservation or Prudence ........ 31

1. No preservation bar applies ........ 32

2. Prudential precedent does not allow affirmance without addressing the illegal-exaction waiver ........ 36

CONCLUSION ........ 37

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acadia Tech., Inc. v. United States*,
458 F.3d 1327 (Fed. Cir. 2006) ........ 9, 10

*Aerolineas Argentinas v. United States*,
31 Fed. Cl. 25 (1994) ........ 31

*Aerolineas Argentinas v. United States*,
77 F.3d 1564 (Fed. Cir. 1996) ........ *passim*

*AmeriSource Corp. v. United States*,
525 F.3d 1149 (Fed. Cir. 2008) ........ 9

*Ark. Game & Fish Comm'n v. United States*,
568 U.S. 23 (2012) ........ 11

*Baker v. City of McKinney*,
No. 21-cv-00176, 2022 WL 2068257
(E.D. Tex. Apr. 29, 2022) ........ 8, 12, 15

*Baker v. City of McKinney*,
No. 21-cv-00176, 2022 WL 3704302
(E.D. Tex. Aug. 26, 2022) ........ 6, 11

*Bennis v. Michigan*,
516 U.S. 442 (1996) ........ 8

*Blueport Co., LLP v. United States*,
71 Fed. Cl. 768 (2006) ........ 34

*Boeing Co. v. United States*,
968 F.3d 1371 (Fed. Cir. 2020) ........ 22, 29, 31

*Bowman v. United States*,
35 Fed. Cl. 397 (1996) ........ 35

*Brinegar v. United States*,
338 U.S. 160 (1949) ........ 7

*Cedar Point Nursery v. Hassid*,
141 S. Ct. 2063 (2021) ........ 4, 6, 11

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Crocker v. United States*,
125 F.3d 1475 (Fed. Cir. 1997) .......... 29, 30

*Data Gen. Corp. v. Johnson*,
78 F.3d 1556 (Fed. Cir. 1996) .......... 16

*First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty.*,
482 U.S. 304 (1987) .......... 4, 15

*Flast v. Cohen*,
392 U.S. 83 (1968) .......... 36

*Folden v. United States*,
379 F.3d 1344 (Fed. Cir. 2004) .......... 35

*Ford Motor Co. v. United States*,
635 F.3d 550 (Fed. Cir. 2011) .......... 34

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) .......... 28

*Haines v. Kerner*,
404 U.S. 519 (1972) (per curiam) .......... 32

*Haw. Hous. Auth. v. Midkiff*,
467 U.S. 229 (1984) .......... 12

*Heagy v. United States*,
12 Cl. Ct. 694 (1987) .......... 30

*Horne v. Dep't of Agric.*,
576 U.S. 350 (2015) .......... 7, 11

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) .......... 17

*Kaiser Aetna v. United States*,
444 U.S. 164 (1979) .......... 14

*Kam-Almaz v. United States*,
682 F.3d 1364 (Fed. Cir. 2012) .......... 8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Knick v. Twp. of Scott*,
139 S. Ct. 2162 (2019) ........ 4, 17, 18, 19

*Lingle v. Chevron U.S.A. Inc.*,
544 U.S. 528 (2005) ........ 12

*Litzenberger v. United States*,
89 F.3d 818 (Fed. Cir. 1996) ........ 35

*Lucas v. S.C. Coastal Council*,
505 U.S. 1003 (1992) ........ 11

*Mallow v. United States*,
161 Ct. Cl. 446 (1963) ........ 22

*Martinez v. United States*,
333 F.3d 1295 (Fed. Cir. 2003) (en banc) ........ 22

*McCutchen v. United States*,
14 F.4th 1355 (Fed. Cir. 2021) ........ 15

*Pentax Corp. v. Robison*,
135 F.3d 760 (Fed. Cir. 1998) ........ 17

*Piszel v. United States*,
833 F.3d 1366 (Fed. Cir. 2016) ........ 27

*Ramos v. United States*,
112 Fed. Cl. 79 (2013) ........ 9

*Reinard v. Crown Equip. Corp.*,
983 F.3d 1064 (8th Cir. 2020) ........ 17

*Rinehart v. Weitzell*,
964 F.3d 684 (8th Cir. 2020) ........ 33

*Roche v. USPS*,
828 F.2d 1555 (Fed. Cir. 1987) ........ 33

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984) ........ 13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*, 550 F.3d 1121 (Fed. Cir. 2008) ........ 36, 37

*Seay v. United States*, 61 Fed. Cl. 32 (2004) ........ 9

*Steward v. United States*, 80 Fed. Cl. 540 (2008) ........ 9

*Swift & Courtney & Beecher Co. v. United States*, 111 U.S. 22 (1884) ........ 34

*TrinCo Inv. Co. v. United States*, 722 F.3d 1375 (Fed. Cir. 2013) ........ 11

*Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346 (Fed. Cir. 2010) ........ 16

*United States v. Hall*, 269 F.3d 940 (8th Cir. 2001) ........ 18, 19, 20

*United States v. Hamed*, 976 F.3d 825 (8th Cir. 2020) ........ 16

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) ........ 23, 33

*United States v. Lee*, 106 U.S. 196 (1882) ........ 7

*United States v. Morrison*, 529 U.S. 598 (2000) ........ 15

*United States v. Romero*, No. 12-cr-224, 2013 WL 625338 (D.N.D. Feb. 20, 2013) ........ 9

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) ........ 35, 36

*White v. City of Greensboro*, 408 F. Supp. 3d 677 (M.D.N.C. 2019) ........ 9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Young v. UPS*,
575 U.S. 206 (2015) .......... 31

**CONSTITUTIONAL AND STATUTORY AUTHORITIES**

U.S. Const. amend. V .......... 5

18 U.S.C. § 981 .......... 21

18 U.S.C. § 983 .......... 21

18 U.S.C. § 3101 *et seq.* .......... 21

21 U.S.C. § 853 .......... 21

21 U.S.C. § 881 .......... 21

28 U.S.C. § 1346 .......... 31

28 U.S.C. § 2465 .......... 21

Minn. Stat. Ann. § 168B.06 .......... 25

**OTHER AUTHORITIES**

28 C.F.R. § 8.10 .......... 21

Fed. R. Civ. P. 8 .......... 35

Fed. R. Crim. P. 41 .......... *passim*

Fed. R. Evid. 201 .......... 25

U.S. Dep't of Just., Asset Forfeiture Policy Manual (2013) .......... 21

U.S. Dep't of Just., Asset Forfeiture Policy Manual (2021) .......... 21

## REQUEST FOR ORAL ARGUMENT

In accordance with Federal Rule of Appellate Procedure 34(a), Plaintiff-Appellant Brodrick Jamar Jenkins respectfully reaffirms his request for oral argument. As explained in the Opening Brief, this appeal raises important constitutional issues concerning (1) a constitutionally unjustifiable expansion of a limited "police-power" exception to the otherwise categorical rule that the federal government must pay for property it physically appropriates, and (2) the scope of the Little Tucker Act's waiver of sovereign immunity for illegal-exaction claims.

The United States' request for a ruling that would create new Federal Circuit precedent on both issues only underscores that oral argument would substantially aid the Court in its analysis of this case.[†]

[†] Undersigned counsel is representing Mr. Jenkins pro bono, but to clarify, counsel was not court appointed. *Cf.* Response Br. 25.

# INTRODUCTION

The United States' position on "police-power" takings is as unsupported as it is shocking. Under its approach, a warrant, a third-party subpoena, or even a civil demand backed by the imprimatur of the federal government would allow the United States to take property, without just compensation, and dispose of the property however it wished. The Constitution forecloses adoption of this atextual, ahistorical, and unprecedented theory, which would render the Fifth Amendment's property protections a dead letter.

The Takings Clause requires just compensation for the United States' physical appropriation of Mr. Jenkins' property. Narrow (and constitutionally questionable) police-power precedent does not allow the United States to evade its categorical-compensation duty once it no longer holds property for an investigative or forfeiture purpose.

Furthermore, the Due Process Clause imposes additional limits on the United States' handling of property. The Little Tucker Act's illegal-exaction waiver allows Mr. Jenkins to recover for the United States' improper deprivation of property without due process.

In exercising its jurisdiction under the Tucker Act and Little Tucker Act, this Court ensures that not even the federal government is above the law. Mr. Jenkins is incarcerated, paying his debt to the United States. After years of litigation, it is time for the United States to pay its debt to Mr. Jenkins.

## ARGUMENT

**I.** The United States owes Mr. Jenkins just compensation for its physical appropriation of his property. This Court should accordingly reverse and remand for a hearing to determine just compensation.

**II.** Mr. Jenkins' claims also sound in due-process protections, as the United States and magistrate recognized below. The Little Tucker Act's illegal-exaction waiver provides an alternative avenue to recover for the United States' deprivation of property.

### I. THE UNITED STATES OWES JUST COMPENSATION FOR PHYSICALLY APPROPRIATING MR. JENKINS' PROPERTY

The United States agrees that the first step of the takings analysis is satisfied by the magistrate's factual finding that Mr. Jenkins had a cognizable property interest in the vehicles. Response Br. 26; Appx08; Opening Br. 13 & n.2. The parties only dispute the second

step: whether the physical appropriation amounted to a compensable taking. Opening Br. 20-21.

**A.** Here, a compensable taking occurred because the United States permanently, physically appropriated Mr. Jenkins' property without compensation.

**B.** There is no police-power exception that excuses the just-compensation duty here. The United States still has not provided a *single* authority allowing it to permanently appropriate property without providing just compensation simply because it initially seized the property with a warrant.

**C.** The United States also cannot advance for the first time on appeal its meritless argument that Federal Rule of Criminal Procedure 41(g) provided Mr. Jenkins with a remedy. Response Br. 36. Below, the United States successfully opposed Rule 41(g) relief by promising to return the property. And it later thwarted the district court's Rule 41(g) jurisdiction by admitting that it no longer had the property. The United States' new 41(g) argument is (1) judicially estopped and waived, (2) categorically foreclosed by precedent, and (3) would otherwise fail on its own terms.

### A. The United States Physically Appropriated Mr. Jenkins' Property, Did Not Return It, and Did Not Provide Compensation

A physical-appropriation taking triggers the United States' just-compensation obligation. This rule applies equally to property initially seized pursuant to a warrant once the government's investigative or forfeiture justification for retaining the property no longer exists.

#### 1. The Takings Clause categorically requires just compensation here

The Takings Clause "imposes a clear and categorical obligation" to provide "just compensation" when the government "physically acquires private property for a public use." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021). Physical appropriations present the "clearest sort of taking," requiring application of a simple *per se* rule: "The government must pay for what it takes." *Id.*; *see also First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty.*, 482 U.S. 304, 321 (1987). When the United States fails to return the property or compensate the owner, the Tucker Act and Little Tucker Act provide the owner with an avenue to recover just compensation. *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2170-71 (2019).

Here, there is no dispute as to the facts that establish a physical-appropriation taking. Opening Br. 26-27; *infra* pp. 24-26 (noting the magistrate's factual findings). All agree that:

- Mr. Jenkins has a cognizable property interest in the vehicles.
- The United States seized these vehicles and did not initiate federal-forfeiture proceedings, return the vehicles, or provide just compensation.

Accordingly, Mr. Jenkins is entitled to just compensation.

#### 2. The lawfulness of the initial seizure does not excuse the United States' just-compensation obligation

The United States' only response is that the Supreme Court's categorical rules might apply differently if the physical appropriation was initially a "lawful seizure" related to "federal criminal offenses." Response Br. 32. But this assertion is contradicted by constitutional text, our Nation's history, and binding precedent.

The Fifth Amendment does not distinguish takings that begin as criminal seizures from other takings. The Founders knew how to delineate between criminal and civil restrictions when they deemed necessary. *See, e.g.*, U.S. Const. amend. V (providing rights specific to

crimes and "criminal case[s]"). Rather than so delineating, they categorically required "just compensation" for *all* physical takings regardless of the origin.

The United States' atextual counterproposal lacks any historical basis because the Takings Clause was designed *specifically* to secure compensation for otherwise "lawful" seizures. *See* Human Rights Defense Center Amicus Br. 2 ("It is difficult to think of a property right violation that would be more abhorrent to the Founders…"). "The principle that takings, even by law enforcement, must be compensated" traces all the way back to the "Magna Carta," which specifically prohibited a "constable or other bailiff" from taking property "without immediately tendering money." Professors' Amicus Br. 5. From our Nation's beginning, the Takings Clause has imposed a "simple, *per se* rule" for all physical appropriations: "The government must pay for what it takes." *Cedar Point*, 141 S. Ct. at 2071; *id.* ("The Court's physical takings jurisprudence is 'as old as the Republic'") (citation omitted); *Baker v. City of McKinney*, No. 21-cv-00176, 2022 WL 3704302, at *2 (E.D. Tex. Aug. 26, 2022) ("*Baker II*") (explaining that courts confronting police-power takings must follow "general principles

from the Supreme Court's opinion[s] to guide [their] own analysis"). Indeed, one of the Supreme Court's earliest vindications of the Takings Clause arose after the military seized property from General Robert E. Lee, who was engaged in the gravest of federal criminal offenses. *United States v. Lee*, 106 U.S. 196, 218 (1882). Yet even "military officers, acting under the orders of the president" could not permanently dispossess Lee's heirs of their property "without any process of law and without any compensation." *Id.* at 218-19.

As the Court explained more recently, neither the "character of the government action" nor the "claimed public benefit" is relevant to whether a *per se* physical taking occurred. *Horne v. Dep't of Agric.*, 576 U.S. 350, 359-60 (2015); Opening Br. 25-27 (discussing *Horne*). In *Horne*, for example, federal law authorized the physical seizure of raisins, but the lawful seizure was a compensable taking because the government "dispose[d] of what bec[a]me its raisins as it wishe[d]," and did not compensate the farmers. 576 U.S. at 361. That is because the initial seizure's lawfulness did not render the federal government's subsequent actions constitutional; a physical appropriation is a "*per se* taking that requires just compensation." *Id.* at 358; *see also Brinegar v.*

*United States*, 338 U.S. 160, 182 (1949) (Jackson, J., dissenting) (noting well-established right to "just compensation for the taking of private property," which "may be vindicated" after a seizure by law enforcement "in terms of money"); *Baker v. City of McKinney*, No. 21-cv-00176, 2022 WL 2068257, at *11 (E.D. Tex. Apr. 29, 2022) ("*Baker I*").

### B. No "Police-Power" Exception Applies

The United States' entire argument rides on the false premise that the government may avoid just compensation if it initially seizes the property "pursuant to a valid search warrant." Response Br. 10. But (1) none of the United States' cited authority recognizes such a police-power exception, and (2) precedent forecloses this atextual and ahistorical request for a blanket exception.

#### 1. The United States cannot permanently dispossess Mr. Jenkins of his property without pursuing federal-forfeiture proceedings

The United States cannot identify a single authority blessing a physical appropriation where the government did not return the property or pursue forfeiture through established proceedings. *See Bennis v. Michigan*, 516 U.S. 442, 453 (1996) (state authorities obtained forfeiture); *Kam-Almaz v. United States*, 682 F.3d 1364, 1366

(Fed. Cir. 2012) (property returned); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1329 (Fed. Cir. 2006) (same); *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1151 (Fed. Cir. 2008) (same); *see also Seay v. United States*, 61 Fed. Cl. 32, 34 (2004) (same); *Steward v. United States*, 80 Fed. Cl. 540, 541, 544 (2008) (record unclear on status of forfeiture and the plaintiff's property, but United States admitted that 41(g) relief was still available); *White v. City of Greensboro*, 408 F. Supp. 3d 677, 703 (M.D.N.C. 2019) (property retained for prosecution), *vacated in part*, No. 18-cv-00969, 2022 WL 510455 (M.D.N.C. Feb. 21, 2022); *Ramos v. United States*, 112 Fed. Cl. 79, 82 (2013) (Dominican Republic seized and lost property).[1]

Additionally, some of the United States' citations actually support Mr. Jenkins' position. *See, e.g.*, *United States v. Romero*, No. 12-cr-224,

---

[1] In *Ramos*, the takings claim was barred by *res judicata* and time-barred. 112 Fed. Cl. at 84, 86. Assets were seized in the Dominican Republic when the "United States and the Dominican Republic cooperated in arresting Mr. Ramos." *Id.* at 82. The record did not establish that the United States ever held the property, and the United States even "informed the Dominican authorities that [it] had no interest in the seized property and presented a request that the property be returned." *Id.* The Dominican Republic, however, lost the property. *Id.* Cursory dicta suggesting that this loss of property by another sovereign did not beget a taking is of no help to the United States here. *Id.* at 86.

2013 WL 625338, at *5 (D.N.D. Feb. 20, 2013) (holding that a defendant should file a takings claim to obtain just compensation if the property was not forfeited); *see also* Opening Br. 29-32 (discussing cases cited below).

Nevertheless, the United States maintains that the fact that Jenkins' "vehicles were not returned to him," is a "distinction without a difference." Response Br. 30. But this is the *dispositive* difference.

It is one thing to follow constitutionally questionable decisions concluding that no compensable taking occurs where property is temporarily held and damaged but "ultimately returned to the owner" after the criminal-investigative or forfeiture justification dissipates. *Acadia Tech., Inc.*, 458 F.3d at 1331; *see also id.* at 1334 (acknowledging the "due process right to have the government either return the property or initiate forfeiture proceedings without unreasonable delay"); Professors' Amicus Br. 18-30 (discussing the limits on constitutionally questionable police-power precedent and the dangers in expanding it). It is quite another to create an unprecedented exception allowing the government to do whatever it wants with property after it produces a search warrant. *See* Opening Br. 29; *see also* Professors' Amicus Br. 26.

As the United States acknowledges, any limited exception to the just-compensation duty must come from a constitutionally historical basis "consistent with longstanding background restrictions on property rights." Response Br. 33 (quoting *Cedar Point*, 141 S. Ct. at 2079). These exceptions primarily involve limited, temporary intrusions by the government like the "privilege to enter property to effect an arrest" or to execute a search. *Cedar Point*, 141 S. Ct. at 2079. The Supreme Court has consistently rejected attempts to expand even *these* limited, temporary intrusions. *See id.* at 2080 (no historical basis to grant labor organizations a right to temporarily enter private property); *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 36-37 (2012); *see also Horne*, 576 U.S. at 366; *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1028 (1992). To avail itself of a longstanding exception, the government must point to a historical "defense" or privilege and stay within the confines of that defense or privilege. *TrinCo Inv. Co. v. United States*, 722 F.3d 1375, 1380 (Fed. Cir. 2013); *see also* Opening Br. 41; *Baker II*, 2022 WL 3704302, at *2 (discussing narrowness of historical privileges).

The United States has not done so here. Indeed, it has not cited a *single* case justifying its requested exception despite being able to draw

from over 200 years of American constitutional jurisprudence. *See* Opening Br. 42-45; *Baker I*, 2022 WL 2068257, at *11 (rejecting a similar request and holding that the City had to compensate an owner for destroying her home while apprehending a criminal).

### 2. Supreme Court precedent forecloses the requested new "police-power" exception

As explained in the Opening Brief, the requested police-power exception also contravenes the Supreme Court's holdings on (i) the public-use clause, (ii) foundational takings jurisprudence, and (iii) the lack of a freestanding federal police power. Opening Br. 33-44.

**i.** The "public use" clause is a narrow limitation on government action that cannot be invoked by the government to avoid paying just compensation. Opening Br. 34-37. The "Takings Clause presupposes that the government has acted in pursuit of a valid public purpose." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005). Exercises of a police power undeniably fit within the Supreme Court's definition of "public use." *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 240 (1984) ("The 'public use' requirement is thus coterminous with the scope of a sovereign's police powers.").

Absent an admission that federal officers took *ultra vires* or tortious action, the United States' exercise of its police power constituted a public use. *See* Opening Br. 12 (explaining that the United States did not assert *ultra vires* or tortious action on the part of individual federal officers as a defense). Indeed, the property was put to numerous public purposes here. The government exercised its police power to hold evidence for a prosecution in the name of the public. There is no record evidence establishing that the DEA *ever* relinquished its hold on the vehicles. *See* Opening Br. 6-8; *cf.* Appx18, Appx91-92, Appx104-105. The federal government saved the public fisc from bearing custodial costs related to the storage of the vehicles. And it shared the property held in its custody with both another sovereign (the state of Minnesota) and a private party (the Impound Lot). *Compare* Response Br. 4 (representing that Minnesota's BCA "released holds on two vehicles"), *with id.* at 24 ("Once the DEA released the holds on the vehicles" they "were in the custody of the Impound Lot owner"); *see also* *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 992-93, 1014 (1984) (rejecting the argument that there is no "public use" where the federal

government gives property to another private party and leaves it to the parties to negotiate compensation prior to a Tucker Act suit).

**ii.** Holding that invocation of a "police power" discharges the government's just-compensation obligation would upend the foundation for all takings jurisprudence. Opening Br. 37-39. Whether a taking occurred is "an entirely separate question" from whether the federal government initially had power to execute its chosen action. *Kaiser Aetna v. United States*, 444 U.S. 164, 174 (1979). The United States does not square its new exception with established precedent. It only maintains that no compensable taking can occur once property is initially "seized pursuant to a valid search warrant." Response Br. 10; *cf. supra* Part I.A.2.

The breadth of this new exception is striking. The United States does not explain why it would bother with forfeiture proceedings or eminent-domain proceedings if it could just keep property after an initial lawful seizure. Indeed, the end result of the United States' position is that there can be no taking if it avoids eminent-domain proceedings. *See also* Appx155-156.

But the Supreme Court's entire takings jurisprudence "is predicated on the proposition that a taking may occur without such formal proceedings." *First Eng.*, 482 U.S. at 316. The Fifth Amendment categorically "secure[s] *compensation* in the event of [an] otherwise proper interference amounting to a taking." *Id.* at 315. The United States' new exception flouts these foundational rules and would "undermine[] decades of Supreme Court Takings precedent." *Baker I*, 2022 WL 2068257, at *12 (rejecting the argument that "total destruction of private property pursuant to the government's exercise of its police power is categorically non-compensable").

**iii.** Furthermore, "the Founders denied the National Government" any general "police power." *United States v. Morrison*, 529 U.S. 598, 618 (2000). Thus, any "'police power' rationale, where the federal government is concerned, must be considered within the context of constitutional authorization of particular powers." *McCutchen v. United States*, 14 F.4th 1355, 1363 n.4 (Fed. Cir. 2021) (citing cases); Opening Br. 40-41.

The United States can only permanently dispossess someone of property seized in a criminal investigation by pursuing established

federal-forfeiture proceedings. *See infra* Part II. It did not pursue that federal "police power," and it otherwise has no federal authority to avoid its categorical just-compensation obligation here.

### C. The United States Cannot Advance Its New, Meritless Rule 41(g) Argument

Perplexingly, the United States now argues that Mr. Jenkins should have used Federal Rule of Criminal Procedure 41(g)—allowing the district court to order the return of property—as the "appropriate remedy" to seek the return of property that the United States no longer held. Response Br. 36. This argument is (1) judicially estopped and waived, (2) categorically foreclosed by Supreme Court precedent, and (3) would otherwise fail on its own terms.

#### 1. Judicial estoppel and waiver bar the Rule 41(g) argument

"[W]here a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996); *United States v. Hamed*, 976 F.3d 825, 828-30 (8th Cir. 2020); *Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir.

2010). After successfully opposing Rule 41(g) relief in the criminal proceeding, the United States cannot now argue that Mr. Jenkins should have pursued a Rule 41(g) remedy. As the United States admitted in its Answer, Mr. Jenkins sought return of his property by filing "a motion under Rule 41." Appx71. But the United States successfully opposed relief by arguing that "it would return certain property, including the two vehicles." Appx17.

Additionally, the United States waived this argument. *See Reinard v. Crown Equip. Corp.*, 983 F.3d 1064, 1066, 1069 (8th Cir. 2020); *Pentax Corp. v. Robison*, 135 F.3d 760, 762 (Fed. Cir. 1998); *see also In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020) (describing the difference between waiver and forfeiture). The United States intentionally relinquished its current Rule 41(g) argument when it argued the opposite below: that Rule 41(g) provided Mr. Jenkins *no* avenue to relief when "the government no longer ha[d] possession of the property." Appx97.

### 2. ***Knick*** **and related precedent foreclose the Rule 41(g) argument**

Regardless, precedent forecloses the argument on the merits. As the Supreme Court reaffirmed in *Knick*, "[t]he Fifth Amendment right

to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." 139 S. Ct. at 2170. A party need not seek equitable relief under Rule 41(g) before bringing a just-compensation suit "because a taking without compensation violates the self-executing Fifth Amendment at the time of the taking." *Id.* at 2712. Accordingly, "the property owner can bring a federal suit at that time," including one "under the Tucker Act." *Id.*; *id.* at 2171 ("The availability of any particular compensation remedy … cannot infringe or restrict the property owner's federal constitutional claim.").

The United States' cited authority does not contradict *Knick* or establish that a claimant must exhaust Rule 41(g) proceedings before bringing a Little Tucker Act suit. *Cf.* Response Br. 38-39. It is true that district courts retain "equitable jurisdiction" under Rule 41(g) "to resolve issues of fact that may help to determine whether" an alternative claim for money damages is cognizable. Response Br. 39 (quoting *United States v. Hall*, 269 F.3d 940, 943 (8th Cir. 2001)). But that does not require exhaustion of Rule 41(g) proceedings. Rather, this retained equitable jurisdiction simply provides a mechanism to convert

a case into one under the "Tucker Act" or "the Little Tucker Act," where "the government discloses that it has lost, destroyed, or transferred property that would otherwise be subject to" return. *Hall*, 269 F.3d at 943. The United States also cites three nonbinding Court of Federal Claims' decisions to support its unconstitutional ripeness rule, but each of those decisions relied on *Williamson County* and its progeny, which the Supreme Court explicitly overruled in *Knick*. *See* 139 S. Ct. at 2173 ("*Williamson County* broke with the Court's longstanding position that a property owner has a constitutional claim to compensation at the time the government deprives him of his property"); Response Br. 38-39 (citing only pre-*Knick* cases).

#### 3. Mr. Jenkins would prevail even under the United States' test

Finally, even were the argument for a Rule 41(g) prerequisite not judicially estopped, waived, and foreclosed by precedent, it still would fail here because there was no opportunity to secure Rule 41(g) relief. As the United States acknowledged below, a court only has Rule 41(g) authority if it retains equitable jurisdiction over the property. Appx97. And as the United States' own citations explain, when a "court conducting a Rule 41[g] proceeding learns that the government no

longer possesses property that is the subject of the motion to return, the court should grant the movant (particularly a movant proceeding *pro se*…) an opportunity to assert an alternative claim for money damages." *Hall*, 269 F.3d at 943.

Once the United States *admitted* that it no longer retained the property, Mr. Jenkins had no opportunity to secure Rule 41 relief—through renewal of his 41(g) motion or otherwise. Rule 41(g) cannot provide relief when the United States did not have the vehicles in its possession to return. Thus, Mr. Jenkins could *only* proceed under the Tucker Act or Little Tucker Act.

## II. THE LITTLE TUCKER ACT WAIVES SOVEREIGN IMMUNITY FOR MR. JENKINS' DUE-PROCESS CLAIM

**A.** Mr. Jenkins invoked the Due Process Clause to challenge the United States' deprivation of his property outside federal-forfeiture proceedings. The United States acknowledges that the instant deprivation occurred outside established federal-forfeiture proceedings. Accordingly, the Little Tucker Act's jurisdictional prerequisites for an illegal-exaction waiver are met.

**B.** Rather than engage on the merits, the United States argues that this Court cannot reach the jurisdictional argument. But because

the illegal-exaction waiver implicates jurisdiction, precedent on preservation and prudence does not allow the United States to dodge the illegal-exaction inquiry.

### A. The Due-Process Claim Meets the Jurisdictional Requirements for an Illegal-Exaction Waiver

Mr. Jenkins' well-pled allegations and the undisputed record establish that the United States' conduct here either constituted an uncompensated taking for public use, *supra* Part I, or an illegal exaction in contravention of the Due Process Clause and a host of other statutes and regulations.[2] *See* Opening Br. 48-53. On the merits, the United States only argues that it "was not paid any money directly or in effect," Response Br. 23, but precedent and the record contradict this assertion. Furthermore, application of the illegal-exaction waiver is not governed by money-mandating precedent. *E.g.*, Response Br. 14-16.

[2] *Cf.* Fed. R. Crim. P. 41; 18 U.S.C. § 3101 *et seq.*; 28 U.S.C. § 2465(a)(1); 18 U.S.C. §§ 981, 983; 21 U.S.C. §§ 853, 881; 28 C.F.R. § 8.10(e); *see also* U.S. Dep't of Just., Asset Forfeiture Policy Manual, at 14-15 (2021); U.S. Dep't of Just., Asset Forfeiture Policy Manual, at 27 (2013).

### 1. Mr. Jenkins pled a due-process claim implicating the illegal-exaction waiver, which the undisputed record supports

The Little Tucker Act waives sovereign immunity for at least *three separate* types of action against the United States: (1) contract actions, (2) money-mandating actions, and (3) illegal exactions. *Martinez v. United States*, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003) (en banc); *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573-74 (Fed. Cir. 1996). The illegal-exaction waiver is triggered by a claim for damages against the United States alleging that the government improperly exacted property in violation of the Constitution, a statute, or a regulation. *Aerolineas*, 77 F.3d at 1572-73. It is well-established that a violation of the Due Process Clause can trigger the illegal-exaction waiver. *See, e.g.*, *Mallow v. United States*, 161 Ct. Cl. 446, 449-50 (1963). Both (i) Mr. Jenkins' pleadings and (ii) the record supply the necessary predicates for an illegal-exaction waiver.

**i.** At the jurisdictional dismissal stage, Mr. Jenkins only needed to make a non-frivolous allegation that the United States' deprivation of property contravened due-process protections. *See Boeing Co. v. United States*, 968 F.3d 1371, 1383 (Fed. Cir. 2020).

He cleared that hurdle by alleging that the United States deprived him of property without notice or a hearing to contest the deprivation. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).

Specifically, Mr. Jenkins' pro-se complaint pled the prerequisites to trigger the illegal-exaction waiver by identifying the Little Tucker Act as an applicable waiver, Appx37, and alleging that the government violated due process by seizing his property and failing to inform him that "his vehicles could be picked up" prior to auction. Appx39. He alleged that "federal authorities had control of the vehicles and the placement of those vehicles at the impound lot," and maintained that "[o]nce the case was closed," the United States should have returned the vehicles or at least made them "available for return to him." Appx39. Both the United States' "failure to notify him after [the initial] search," and its decision to release the vehicles into the Impound Lot's custody directly caused the deprivation. Appx40. Thus, he requested compensation or other available "remedies" if the court concluded that "the government acted improperly." Appx40.

**ii.** Although record examination is unnecessary to establish that the magistrate prematurely dismissed the alternative due-process claim, the undisputed record also confirms the predicates for an illegal-exaction waiver. As the magistrate found, "the United States seized Jenkins' vehicles but did not notify Jenkins where the vehicles were held or when the holds on the vehicles were released." Appx09. Additionally, the United States did not follow federal-forfeiture procedures. *See* Opening Br. 49-50 & n.6; *see also* Appx95 (admitting that "[t]he vehicles were never forfeited to the United States").

The parties agree on almost all elements triggering an illegal-exaction waiver. The United States does not dispute that it conceded, and the magistrate concluded, that Mr. Jenkins's claims implicated the Due Process Clause. Appx172; Appx174. And despite its late-breaking attempts to recast the narrative, it does not request clear-error review of the magistrate's factual findings establishing that it provided no notice or federal due process, and that its actions were the cause of the deprivation.

The United States briefly mentions Minnesota law, but compliance with Minnesota law is irrelevant to a *federal* due-process

claim. Regardless, despite suggesting that the Impound Lot followed "Minnesota state law" by sending pre-auction notice letters that no one received, the United States does not dispute that both it and the Impound Lot failed to comply with the initial-notice provision, which requires "'the unit of government or impound lot operator taking [an impounded vehicle] into custody' to 'give written notice of the taking within five days,' Minn. Stat. Ann. § 168B.06(a)." Opening Br. 52 n.7. Even were state law relevant, the United States failed to comply with it from the beginning.

More importantly, the United States has not requested clear-error review of the magistrate's finding on lack of notice, or the finding that Mr. Jenkins had suffered an invasion of a "legally protected" property interest causally connected to the United States' conduct. Appx06, Appx08-09. The United States says that "[i]t is now disputed whether law enforcement or the Impound Lot informed Jenkins the vehicles were released." Response Br. 7. But it cannot dispute a factual finding on appeal without requesting clear-error review, and certainly cannot ask this Court to enter a contrary factual finding by referencing "prior briefing" from the criminal case. *Id.*; *cf.* Fed. R. Evid. 201 (requirements

for judicial notice). Furthermore, the United States does not argue, even now, that *it provided* the requisite federal due process. *Cf.* Opening Br. 49-50 & n.6 (citing federal authority and explaining that "no federal statute, regulation, or even policy guidance allows the United States to refuse to return property—or turn it over to a third party—if the property is not being temporarily held for a criminal or forfeiture proceeding").

These concessions and findings establish that Mr. Jenkins more than meets the jurisdictional requirements for the illegal-exaction waiver.

#### 2. The United States' sole merits counterargument ignores precedent and distorts the record

The United States only claims that the illegal-exaction waiver is not triggered because it "was not paid any money directly or in effect." Response Br. 23. But both precedent and the undisputed record belie this assertion.

**i.** On precedent, *Aerolineas* controls. As the United States acknowledges, "[i]n *Aerolineas*, a claim for illegal exaction was held to exist where the government required the airline to make payments to a third-party for the housing and care of certain foreign passengers."

Response Br. 22. Specifically, the court held that if the government complied with federal law, the government—not the airlines—would be required to bear custodial costs. *Aerolineas*, 77 F.3d at 1573-74. The illegal-exaction waiver thus allowed the airlines to recover damages for the property exacted. *Id.* at 1573-74, 1578. The same obtains here.[3]

**ii.** Nonetheless, without record citation, the United States claims that it had no "right to control" the Impound Lot, Response Br. 24, and that it did not "receive any direct or indirect monetary benefit from" the Impound Lot, Response Br. 25. Not so.

As to control, the United States does not dispute that it was responsible for the vehicles, it did not return them, and it did not comply with federal procedures for handling property once any investigative or forfeiture purpose dissipated. *Supra* Part II.A. The United States further admits that the Impound Lot could not do anything with the vehicles until the holds were released. *See* Response Br. 23; *see also* Appx18, Appx91-92, Appx104-105. Had the United

[3] *Piszel v. United States*, 833 F.3d 1366 (Fed. Cir. 2016) (Response Br. 23), is not to the contrary. There, no money or property changed hands; the government only prohibited "golden parachute payments" to terminated Freddie Mac executives. *Id.* at 1369. The plaintiff's proper recourse was a contract action. *Id.* at 1381.

States complied with federal law, it would have returned the vehicles. *See, e.g.*, Opening Br. 50 n.6 (citing federal law that the United States ignored in its response).

As to benefit, the United States received the monetary benefit of avoiding custodial costs that triggered the vehicles' auction. These are the very same costs the United States now claims were "costs associated with retrieval," Response Br. 23, had Mr. Jenkins and his mother not been in federal custody and been able to receive notice or retrieve the vehicles. If the United States retrieved the vehicles to return to their owners (as federal law requires), it would have paid these costs.[4]

***

This Court should reverse the jurisdictional dismissal of the due-process claim. Alternatively, if further factfinding is necessary, remand is the only option. *See, e.g.*, *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1324 (Fed. Cir. 2008).

[4] The United States also does not cite evidence demonstrating that the Impound Lot retained proceeds of the sales. *See* Response Br. 6.

### 3. Money-mandating precedent does not alter the analysis

Because Mr. Jenkins' allegations meet the prerequisites for an illegal-exaction waiver, there is no requirement that the action be based on a money-mandating source of law. Opening Br. 53-56; *see, e.g.*, *Boeing Co.*, 968 F.3d at 1384. Yet despite conceding elsewhere that the Little Tucker Act independently waives sovereign immunity for both "illegal-exaction claims" and "money-mandating" claims, Response Br. 16, the United States also suggests that the due-process claim fails because the Due Process Clause is not money-mandating. *See* Response Br. 14-16. In so arguing, the United States does not address controlling authority, Opening Br. 53-56, or offer any of its own. It instead (i) string-cites inapposite cases, and (ii) mischaracterizes this Court's decision in *Crocker*. Neither of which undermine (iii) binding illegal-exaction jurisprudence.

**i.** None of the due-process cases in the United States' unadorned string-cite even mention illegal-exaction jurisprudence. *See* Response Br. 14-15. Errant statements in these decisions—about whether the Due Process Clause requires the payment of money under different factual circumstances—cannot even offer dicta on the contours

of an illegal-exaction waiver. *See, e.g.*, *Heagy v. United States*, 12 Cl. Ct. 694, 695, 698 (1987) (challenging the failure to postpone a mortgage foreclosure); Response Br. 14.

**ii.** The United States also mischaracterizes *Crocker v. United States*, which affirmed a Court of Federal Claims' jurisdictional dismissal because the plaintiff's due-process claim "would require equitable enforcement, a remedy available only in a district court." 125 F.3d 1475, 1476 (Fed. Cir. 1997) (per curiam). In *Crocker*, the United States *instituted* forfeiture proceedings, and administratively forfeited the claimant's property after she failed to file a required claim. *Id.* at 1475-76. The court acknowledged that the Tucker Act (and by extension the Little Tucker Act) provided jurisdiction for claims seeking to recover for "exactions said to have been illegally imposed by federal officials." *Id.* at 1477. But because the Court of Federal Claims does not have jurisdiction to "fashion equitable relief," the plaintiff's proper forum was an Article III district court, which would have equitable jurisdiction "over a forfeiture of seized property or money." *Id.*; *see also id.* ("[T]he Little Tucker Act vests a district court with jurisdiction to review the forfeiture of a car under the Controlled Substances Act.").

**iii.** The United States' blending of money-mandating and illegal-exaction jurisprudence has been rejected time and again by this Court. *See, e.g.*, *Aerolineas Argentinas v. United States*, 31 Fed. Cl. 25, 31, 37 (1994) (confounding the two waivers), *vacated*, 77 F.3d at 1578 (remanding for determination of award to plaintiffs); Opening Br. 53. As this Court has consistently reaffirmed, "from *Eastport S.S.* through *Testan* through later cases of this court," the money-mandating requirement only applies "to claims for money damages for government action *different from* … illegal exaction." *Boeing Co.*, 968 F.3d at 1383 (emphasis added).[5]

### B. The United States Cannot Evade a Jurisdictional Issue by Arguing Preservation or Prudence

The United States also suggests that the illegal-exaction waiver is "not properly before this Court." Response Br. 16.

---

[5] Beyond being foreclosed by precedent, importing money-mandating requirements into illegal-exaction jurisprudence would also render one of the Little Tucker Act's plain-language waiver's meaningless. 28 U.S.C. § 1346(a)(2) ("*or* for liquidated or unliquidated damages in cases not sounding in tort" (emphasis added)); *see, e.g.*, *Young v. UPS*, 575 U.S. 206, 226 (2015) (canon against surplusage).

But Mr. Jenkins properly preserved his due-process claim implicating the illegal-exaction waiver. And jurisdictional issues "can never be forfeited or waived." Opening Br. 14 n.3 (citation omitted).

Furthermore, the United States' cited "prudential" considerations only allow this Court to remand for the district court to address the waiver. Prudential considerations cannot "foreclose" a ruling on jurisdiction. *Cf.* Response Br. 19.

**1. No preservation bar applies**

Mr. Jenkins satisfied any preservation obligations. And regardless, a jurisdictional argument cannot be forfeited or waived.

**i.** Mr. Jenkins properly preserved his illegal-exaction claim. As the United States acknowledges, his pro-se complaint identified the Little Tucker Act as an applicable waiver of sovereign immunity and "alleged an uncompensated takings claim and a failure to notify due process claim, both arising under the Fifth Amendment." Response Br. 17; Appx37; Appx39; *supra* Part II.A.1; *Aerolineas*, 77 F.3d at 1578 n.3 (noting that takings and illegal exactions are "alternative theories of jurisdiction and recovery"). This more than suffices for preservation. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *see also*

*Roche v. USPS*, 828 F.2d 1555, 1558 (Fed. Cir. 1987) (holding that pro-se pleadings are not "expected to frame issues with the precision of a common law pleading"); *Rinehart v. Weitzell*, 964 F.3d 684, 687-88 (8th Cir. 2020) (same).

Inventing new requirements for the illegal-exaction waiver, the United States posits that Mr. Jenkins did not adequately assert his due-process claim below unless he alleged that "the government's seizure of the vehicles was illegal." Response Br. 18. Yet, as the United States concedes, Mr. Jenkins "alleged the failure to return property lawfully seized violated his due process rights." Response Br. 18. And this "illegal" action—relinquishing the vehicles rather than satisfying custodial costs and returning them to their owners—directly caused the exaction. *See supra* Part II.A.1.

Alternatively, the United States might be arguing that the initial seizure's legality thwarts the illegal-exaction waiver. But that also has no basis in due-process or illegal-exaction jurisprudence. The Supreme Court has held that the Due Process Clause places independent limits on the government's handling of forfeitable property even if an initial seizure is lawful. *James Daniel*, 510 U.S. at 52. As for the illegal-

exaction waiver, "illegal" or "improper" are terms of art used by courts. "Illegal exaction" is simply shorthand for a specific non-tortious, non-contractual claim for damages against the United States. *Aerolineas*, 77 F.3d at 1572-74. Unlike claims of tortious conduct by rogue officials, an illegal exaction occurs when the government acts in its sovereign capacity, but a court later concludes that the action was unlawful or became unlawful. *See id.* at 1578; *see also Swift & Courtney & Beecher Co. v. United States*, 111 U.S. 22, 29 (1884) (describing an "illegal exaction" as "[m]oney paid, or other value parted with" due to submission to "the power of the officers of the law"). Not every government action leading to the exaction needs to be "illegal."[6] And allegations like Mr. Jenkins' trigger the illegal-exaction waiver when they meet the aforementioned predicates. *Supra* Part II.A.1.

**ii.** Regardless, a waiver of sovereign immunity is a jurisdictional issue, which "can never be forfeited or waived." *Ford Motor Co. v. United States*, 635 F.3d 550, 556 (Fed. Cir. 2011); *Blueport*

[6] For example, common illegal-exaction suits seek recovery for "the sums exacted … due to [the government's] misinterpretation or misapplication of statutes, regulations, or forms." *Aerolineas*, 77 F.3d at 1578.

*Co., LLP v. United States*, 71 Fed. Cl. 768, 772 (2006); *see also Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004). As explained in the Opening Brief, the lower court had, and this Court has, an independent duty to evaluate whether Mr. Jenkins' "claim may qualify as one of illegal exaction." *Bowman v. United States*, 35 Fed. Cl. 397, 400 (1996); Opening Br. 14 n.3.[7]

The United States did not address this authority or provide authority establishing that jurisdictional issues can be waived or forfeited. The United States only offers an irrelevant "cf." cite to *United States v. Sineneng-Smith*, which held that the Ninth Circuit should not have invited amici to brief a constitutional *merits* issue that the parties had not addressed. 140 S. Ct. 1575, 1579, 1581-82 (2020). That case

[7] The United States takes issue with a reference to the pro-se complaint's citation of "unspecified case law that mentions illegal exaction." Response Br. 18. Complaints are not required to cite precedent. Fed. R. Civ. P. 8(a)(2). But for clarity, Mr. Jenkins cited both (1) precedent establishing the propriety of converting a 41(g) motion into a Little Tucker Act claim if the United States no longer had the challenged property, Appx39-40, and (2) *Litzenberger v. United States*, 89 F.3d 818, 820 (Fed. Cir. 1996), which acknowledges that the Little Tucker Act provides district courts with authority to adjudicate a claimant's illegal-exaction claim that he "would be entitled to money damages if" the United States' forfeiture of a vehicle was unlawful, *id.*; Appx42.

said nothing about pleading jurisdictional requirements except to note that a court could properly appoint amici to address "jurisdiction," *id.* at 1583, which, again, is an issue that cannot be waived or forfeited.

### 2. Prudential precedent does not allow affirmance without addressing the illegal-exaction waiver

Next, the United States suggests that the Court "should decline to entertain" the illegal-exaction theory as a "prudential matter." Response Br. 19. But it cannot muster any "prudential" authority establishing that this Court is "foreclose[d]" from considering a jurisdictional matter, and can thus affirm without addressing whether the complaint satisfies the illegal-exaction waiver. Response Br. 19, 40.

In fact, the United States acknowledges that its precedent does not apply to "jurisdictional matters." Response Br. 19; *see also Flast v. Cohen*, 392 U.S. 83, 88 n.2 (1968) (explaining that "lateness" of a jurisdictional claim raised for the "first time in" an appellate brief is "irrelevant"). This Court has prudential discretion to "*remand* issues, even jurisdictional ones, to the trial court." *Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*, 550 F.3d 1121, 1134 (Fed. Cir. 2008) (emphasis added). But because jurisdiction is implicated, the

Court must either address the illegal-exaction waiver or remand. *See id.*

Additionally, prudential considerations support addressing the illegal-exaction issue because (1) "the issue is properly before this Court," since both parties fully briefed it; and (2) Mr. Jenkins filed the operative complaint while proceeding "pro se in the lower court." Response Br. 20.

## CONCLUSION

This Court should reverse and remand for an evidentiary hearing to determine the amount of compensation owed to Mr. Jenkins. Alternatively, this Court should reverse and remand for any necessary further proceedings prior to an award of compensation.

Dated: September 14, 2022

Respectfully submitted,

*/s/ H. Hunter Bruton*

James Burnham
H. Hunter Bruton
*Counsel of Record*
Megan E. Ball
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
hbruton@jonesday.com

*Counsel for Appellant Brodrick Jamar Jenkins*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) and Circuit Rule 32(b).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f) and Circuit Rule 32(b)(1), the brief contains 6,950 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14 point Century Schoolbook font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated: September 14, 2022

*/s/ H. Hunter Bruton*
H. Hunter Bruton