# United States Court of Appeals for the Federal Circuit

---

**BRODRICK JAMAR JENKINS,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1378

---

Appeal from the United States District Court for the District of North Dakota in No. 3:19-cv-00188-ARS, Magistrate Judge Alice Senechal.

---

Decided: June 28, 2023

---

HAMPTON HUNTER BRUTON, Robinson, Bradshaw & Hinson, P.A., Chapel Hill, NC, argued for plaintiff-appellant. Also represented by LAWRENCE C. MOORE, III.

MELISSA HELEN BURKLAND, United States Attorney's Office, United States Department of Justice, Fargo, ND, argued for defendant-appellee. Also represented by MEGAN A. HEALY, JENNIFER KLEMETSRUD PUHL.

DANIEL WOOFTER, Goldstein, Russell & Woofter LLC, Washington, DC, for amicus curiae Human Rights Defense Center.

MATTHEW T. MARTENS, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, for amici curiae Julia D. Mahoney, Ilya Somin. Also represented by DONNA FARAG, DOUGLAS GATES.

---

Before LOURIE, DYK, and STARK, *Circuit Judges*.

DYK, *Circuit Judge*.

Brodrick Jamar Jenkins seeks compensation under the Fifth Amendment's takings and due process clauses for the federal government's appropriation of his two vehicles. He agrees that the government properly seized the vehicles pursuant to a criminal investigation, but argues that the government is liable for failing to return them after the completion of the criminal investigation, transferring possession of the cars to an impound lot, and selling them or authorizing their sale by the impound lot. The district court held that it did not have jurisdiction over the due process claim and granted the government's motion for summary judgment on the takings claim. We vacate the district court's grant of summary judgment on the takings claim and remand for future proceedings. We affirm the district court's dismissal on the due process clause for lack of jurisdiction, but without prejudice to a motion for leave to amend.

## BACKGROUND

At issue in this case are two automobiles owned by Mr. Jenkins. He purchased one car, a 1987 Oldsmobile Cutlass, at the end of 2011 and the other, a 2001 Chevrolet Tahoe, in 2012. Mr. Jenkins transferred title to the cars to his mother, Stephanie Buchanan, a few months after purchasing each car. However, Mr. Jenkins retained exclusive use of both vehicles.

In the spring of 2011, the United States Drug Enforcement Administration ("DEA") began investigating Mr. Jenkins because of suspicions that he was involved in a drug conspiracy. During the investigation, DEA seized the two vehicles, and they were towed to Twin Cities Transport and Recovery's impound lot. The DEA put a "hold" on the vehicles and obtained a search warrant for them. It is not entirely clear what a "hold" is, but the parties appear to agree that it had the effect of giving the government control over the vehicles and preventing the impound lot from doing anything with the vehicles, such as selling the cars without the government's authorization. The government obtained a search warrant to search the cars after the seizure. The search warrant was executed on October 24, 2012.

On April 10, 2013, in the District of North Dakota, Mr. Jenkins pled guilty to a drug conspiracy charge and, on October 31, 2013, he was sentenced to 252 months of imprisonment. On October 21, 2013, between Mr. Jenkins' guilty plea and his sentencing, the government contends that the hold on the vehicles was released.[1]

---

[1] The only information in the record about the release of the hold comes from an affidavit of Renee Gardas, the owner and manager of Twin Cities Transport and Recovery. The affidavit states that "the Bureau of Criminal Apprehension for the State of Minnesota ("BCA") released holds on [the] two vehicles." J.A. 104. However, the government's brief states, in separate places, both that the BCA released the hold and that the DEA released the hold. The role of the BCA with respect to the vehicles is unclear. In any event, "the United States is responsible for property that is considered as evidence in a federal trial even if it is in the actual possession of state officials." *United States v. Bailey,* 700 F.3d 1149, 1153 (8th Cir. 2012).

On October 21, the impound lot sent letters to the address on file for Ms. Buchanan notifying her that the vehicles could be "reclaim[ed] . . . upon payment of all the [towing and storage] charges." Joint Appendix ("J.A.") 107; 111. According to her affidavit, Ms. Buchanan did not receive the letters because she no longer lived at the address to which they were sent. No letter was addressed to Mr. Jenkins, and he did not receive the letters addressed to Ms. Buchanan. In the present proceeding, the magistrate judge found that "[i]t is undisputed that the United States seized Jenkins' vehicles but did not notify Jenkins where the vehicles were held or when the holds on the vehicles were released." J.A. 9. However, in the underlying criminal case, Mr. Jenkins wrote that he "was informed to go pick-up both motor vehicles." Mot. for Return of Seized Property at 1, *United States v. Jenkins*, No. 3:12-cr-91 (D.N.D. Sept. 14, 2017), ECF No. 891. So the record is unclear as to whether Mr. Jenkins received notice from a source other than the United States that he could pick up his vehicles.

On February 12, 2014, the impound lot sent final notices to Ms. Buchanan at the same address to which it had sent the earlier letters, stating that "[f]ailure to . . . reclaim the vehicle . . . within 10 days shall be deemed a waiver by you of all right, title, and interest in the vehicle and consent to the sale of the vehicle." J.A. 109; 113. Ms. Buchanan did not receive the letter because she was incarcerated. No letter was sent to Mr. Jenkins. The impound lot sold the 2001 Tahoe on May 9, 2014, and the 1987 Cutlass on May 12, 2014, pursuant to the impound lot's policy to sell or otherwise dispose of vehicles that have been unclaimed for 45 days. The proceeds were retained by the impound lot, apparently at least in part to satisfy towing and storage charges.

About three years later, in the fall of 2017, Mr. Jenkins filed a motion in his criminal case for the return of the cars pursuant to Federal Rule of Criminal Procedure 41(g).

Rule 41(g) states: "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). The United States responded that the cars "are available for return upon arrangement by the defendant and impound lot." United States' Resp. to Def.'s Mot. for Return of Property, *United States v. Jenkins*, No. 3:12-cr-91 (D.N.D. Aug. 18, 2017), ECF No. 890. The court dismissed Mr. Jenkins' motion as moot in light of the government's indication that his property would be returned.

Soon after, Mr. Jenkins filed a motion for reconsideration again requesting return of the cars or, in the alternative, that he receive monetary compensation if the United States were unable to find his property. Later, in January 2019, Mr. Jenkins filed a motion requesting monetary compensation for the two cars in excess of $10,000. The court held that it was unable to grant Mr. Jenkins' request for relief for two reasons: Rule 41 of the Federal Rules of Criminal Procedure does not allow for monetary damages, and the court lacked jurisdiction under the Tucker Act because the claim was in excess of $10,000.

Mr. Jenkins then filed a civil action under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), in the same court that heard his criminal case, the District of North Dakota. In this action, Mr. Jenkins claimed that he had suffered a physical taking of his vehicles and requested compensation of $10,000 from the United States under the Fifth Amendment's takings and due process clauses for the sale of his two vehicles. The United States moved to dismiss the complaint for lack of jurisdiction. The case was assigned to a magistrate judge, and the magistrate judge held that the court did not have jurisdiction over Mr. Jenkins' Fifth Amendment due process claim on the theory that the Fifth Amendment's due process clause is not money mandating. However, the magistrate judge found that it had jurisdiction over Mr. Jenkins' Fifth Amendment takings claim.

The magistrate judge found that Mr. Jenkins owned both vehicles and that "for the purposes of determining standing, [Mr. Jenkins] has demonstrated, by a preponderance of the evidence, a causal connection between his loss of the vehicles and the United States' conduct." J.A. 8–9. The government does not challenge the finding that Mr. Jenkins owned the vehicles.

The United States then moved for summary judgment on the takings claim, arguing that if property is seized and retained pursuant to the government's police power, it is not taken for purposes of the Fifth Amendment. The magistrate judge granted the motion and dismissed Mr. Jenkins' complaint because "[t]he Fifth Amendment takings clause does not encompass a claim for just compensation for property seized under governmental police power under the facts of this case." J.A. 23–24. However, the magistrate judge noted that this result was "seemingly inequitable." J.A. 23.

Mr. Jenkins appealed to the Eighth Circuit, and the case was transferred to our court. We have jurisdiction under 28 U.S.C. § 1295(a)(2).

## Discussion

Both a grant of summary judgment and issues of jurisdiction are reviewed de novo. *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015); *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996).

This case presents difficult questions that can occur when the government seizes property in connection with criminal proceedings and retains the property after proceedings have concluded. Other circuits have addressed

some of these questions.[2] These issues are matters of first impression for our court.

I

We first consider Mr. Jenkins' takings claim. "When the government physically acquires private property for a public use, the Takings Clause [of the Fifth Amendment] imposes a clear and categorical obligation to provide the owner with just compensation." *Cedar Point Nursery v. Hassid,* 141 S. Ct. 2063, 2071 (2021). Claimants can pursue a takings claim against the United States under the Little Tucker Act when the amount at issue is not in excess of $10,000. *See Doe v. United States*, 372 F.3d 1308, 1312 (Fed. Cir. 2004); 28 U.S.C. § 1346(a)(2).

---

[2] *See Frein v. Pa. State Police*, 47 F.4th 247, 253 (3d Cir. 2022) (holding that seizing property under a valid warrant does not insulate the government from takings liability when the property is held after the end of the related criminal proceeding); *Conyers v. City of Chicago*, 10 F.4th 704, 711–12 (7th Cir. 2021) (holding that there is no takings clause violation for the government's disposal of seized property that belonged to an arrested person if that property had been abandoned); *United States v. Hall*, 269 F.3d 940, 943 (8th Cir. 2001) (suggesting that the government may be liable for a Fifth Amendment taking if it loses possession of property seized during a criminal investigation); *Mora v. United States*, 955 F.2d 156, 159–60 (2d Cir. 1992) (holding that the court has jurisdiction to provide an equitable remedy under what is now Rule 41(g) if the government loses property seized during a criminal investigation); *United States v. Martinson*, 809 F.2d 1364, 1368–69 (9th Cir. 1987) (same).

"When evaluating whether governmental action constitutes a taking, a court employs a two-part test. First, the court determines whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking. Second, if the court concludes that a cognizable property interest exists, it determines whether the government's action amounted to a compensable taking of that interest." *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1348 (Fed. Cir. 2013). Government action resulting in the transfer of property to a third party may constitute a taking. *Cedar Point Nursery*, 141 S. Ct. at 2071–72.

Here, the district court found Mr. Jenkins has a cognizable property interest in the two vehicles. The government does not dispute this on appeal. At issue is whether the government's action(s) amounted to a compensable taking of the vehicles.

A

The district court held that there was no takings liability because the government's action was a lawful exercise of the police power. In this respect we think the district court erred. To be sure, as the government points out, we have consistently held that the government is not liable under the takings clause for property seizure during a criminal investigation or for damage to such property in its custody, even if the decrease in value renders the property essentially worthless.[3] None of these cases, however,

---

[3] *See United States v. One (1) 1987 Cadillac Coupe De Ville VIN 6D4799266999*, 833 F.2d 994, 1000–01 (Fed. Cir. 1987) (finding that there is no takings liability for the reduction in the value of property while it is held by the government pursuant to a validly instituted but ultimately unsuccessful forfeiture action); *AmeriSource Corp. v.*

suggests or even considers whether the police power exception immunizes the government from liability for failing to return property legally seized after the government's need to retain the property ends.

While the United States' police power may insulate it from liability for an initial seizure, there is no police power exception that insulates the United States from takings liability for the period after seized property is no longer needed for criminal proceedings. In this respect, we agree with the Third Circuit in *Frein v. Pennsylvania State Police* that "[t]hough valid warrants immunize officers who stay within their scope, they are not blank checks," and once criminal proceedings have concluded the government "needs some justification" to retain the property without compensation. 47 F.4th 247, 252–53 (3d Cir. 2022). Even when the initial seizure and retention of property is properly done pursuant to the police power, the police power does not insulate the government from liability for a taking if the property is not returned after the government

*United States*, 525 F.3d 1149, 1150–51 (Fed. Cir. 2008) (finding no takings liability when drugs seized pursuant to a criminal proceeding were worthless after being returned because they were past their expiration date); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1333 (Fed. Cir. 2006) (finding no takings liability when fans seized for potential civil forfeiture were returned after they had become obsolete and their only value was for scrap); *Kam-Almaz v. United States*, 682 F.3d 1364, 1371–72 (Fed. Cir. 2012) (finding no takings liability when a laptop seized pursuant to a law enforcement investigation was returned after its hard drive had failed while in government custody, which deleted most of the business software on the laptop).

interest in retaining the property ceases.[4] The district court erred in concluding that the legitimacy of the initial seizure precluded liability for failure to return the property.

B

Holding that the district court's ground of decision was erroneous does not dispose of this case, which presents difficult issues that cannot be resolved on the incomplete record now before us.

There are four different government actions involved here. As to the first, it is clear that the government incurred no takings liability. As to the others, we remand for development of the more complete factual record needed to properly address the legal issues presented.

First, there is the government's action in seizing the vehicles and retaining them until the point at which they were no longer needed for the criminal investigation and trial. Mr. Jenkins does not argue that there is takings liability for this action, and the cases discussed earlier make clear that there is no such liability. The law is established that there is no takings liability for the government's temporary seizure and holding of property in conjunction with, and during the pendency of, a criminal case or civil forfeiture. *See AmeriSource Corp. v. United States*, 525 F.3d

[4] There is, of course, no takings liability when the government assumes ownership of property pursuant to valid and lawful forfeiture proceedings. *See Bennis v. Michigan*, 516 U.S. 442, 452 (1996). It is undisputed that there was no forfeiture proceeding in this case.

1149, 1154 (Fed. Cir. 2008); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1332 (Fed. Cir. 2006).

Second, there is the alleged government action in retaining the vehicles after they were no longer needed for the criminal investigation and trial. The government seems to admit that it had no interest in retaining the vehicles after the hold on them was released on October 21, and Mr. Jenkins does not contend that the government interest ceased before that date. However, the government maintains that it did not retain the vehicles but surrendered possession of the vehicles to the impound lot on October 21. This factual issue has not been addressed in the district court and cannot be resolved on this record.

The government maintains that, whether or not it retained the vehicles, any takings claim as to government action in retaining the vehicles is barred by the existence of a Rule 41(g) remedy. There is no takings liability for government retention of property if the party whose property was seized fails to and is required to exhaust remedies provided by the federal government. In *Knick v. Township of Scott*, the Supreme Court held that a property owner does not need to exhaust state court remedies in order to bring a federal Fifth Amendment takings claim. 139 S. Ct. 2162, 2167–68 (2019). But *Knick* made clear that a property owner seeking compensation for a taking by the federal government must exhaust alternate required federal remedies before bringing a takings claim, stating that "Congress—unlike the States—is free to require plaintiffs to exhaust administrative remedies before bringing constitutional claims." *Id.* at 2173.

Here, Federal Rule of Criminal Procedure 41(g) provides a remedy for property owners deprived of their property in a federal criminal proceeding. The rule states that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the

property's return." Fed. R. Crim. P. 41(g). As we noted earlier, Mr. Jenkins filed a Rule 41(g) motion in 2017, but he failed to do so at a time when the government allegedly still had possession of his vehicles through its alleged agent, the impound lot. The question remains, however, whether the Rule 41(g) remedy is a mandatory remedy. Moreover, Mr. Jenkins contends that, as a practical matter, there was no Rule 41(g) remedy available to him because the government never notified him that the cars were no longer needed for the criminal investigation or that the cars were available for pickup. Given the ambiguity of the record in this respect, here a remand to the district court is needed to develop a fuller record on the issue of notice. By remanding this issue to the district court, we do not decide whether the Rule 41(g) remedy was required or unavailable, only that these legal issues are best addressed on a more complete record.

Third, there is the government's action in apparently releasing the hold on the vehicles and allegedly transferring possession and control of the cars to the impound lot. When and if the government surrendered possession or control over the vehicles to the impound lot, there was no longer a Rule 41(g) remedy because Rule 41(g) does not allow for monetary damages.[5] *Jackson v. United States*, 526 F.3d 394, 398 (8th Cir. 2008). If and when the government ceased having possession of or control over the vehicles, it

---

[5] There is one qualification to this general statement. Some circuits have suggested that there is an equitable remedy under Rule 41, *see Mora*, 955 F.2d at 159–60; *Martinson*, 809 F.2d at 1367–69, or a remedy under the Federal Tort Claims Act, *see Mora,* 955 F.2d at 160; *United States v. Hall*, 269 F.3d 940, 943 (8th Cir. 2001), if the government fails to return property lawfully in its possession. Neither party has addressed that possibility here, nor do we.

appears that Mr. Jenkins' only remedy (putting aside the due process clause) would be a takings claim under the Tucker Act or Little Tucker Act. *See United States v. Hall*, 269 F.3d 940, 943 (8th Cir. 2001). If so, there is no exhaustion requirement for a takings claim once the government ceased to have possession or control of the vehicles since the Rule 41(g) remedy no longer existed.

The question remains whether the alleged transfer to the impound lot after the government no longer required the vehicles for the criminal proceeding was a taking. A government transfer of private property in its possession to a third party may create takings liability. *See Cedar Point Nursery*, 141 S. Ct. at 2071–72. We think it is premature to address that question on this record. The parties here differ in their interpretation of the facts in a number of relevant respects. They differ as to whether there ever was such a transfer. The government alleges that there was a transfer when the hold was released on October 21. Mr. Jenkins maintains that "[t]here is no record evidence establishing that the DEA *ever* relinquished its hold on the vehicles." Appellant's Reply Br. 13. The parties also differ as to whether Mr. Jenkins ever received notice of the transfer. There is also a related factual issue as to whether Mr. Jenkins abandoned the vehicles which, as discussed below, could preclude a takings claim. A remand is necessary to develop the relevant facts.

Fourth and finally, there is the government's alleged action in selling the vehicles (through its alleged agent the impound lot) or authorizing the sale of the vehicles by the impound lot.[6] The government's apparent theory here is

---

[6] A recent Supreme Court case suggests that the retention of the proceeds of the sale over and above any legal charges (or, here, permitting a third party to retain such

that it had no responsibility for the impound lot's actions and that, in any event, Mr. Jenkins abandoned the vehicles.[7] Mr. Jenkins, on the other hand, appears to argue the impound lot acted as the government's agent in selling the cars, or at least that the government authorized the sale, and that he had not abandoned the cars. Again these competing theories raise factual issues requiring a more complete record.

If the cars were abandoned by Mr. Jenkins, there can be no takings liability for their sale. It is well established that a person cannot be said to have been deprived of property they have abandoned, and thus that the government has no takings liability for taking abandoned property. *See Tyler v. Hennepin County.*, No. 22-166, slip op. at 13–14 (U.S. May 25, 2023); *Texaco, Inc. v. Short*, 454 U.S. 516, 526, 530 (1982); *Cerajeski v. Zoeller*, 735 F.3d 577, 581 (7th Cir. 2013) ("Of course the state can take abandoned property without compensation—there is no owner to compensate.").

The Seventh Circuit has dealt with a similar issue in *Conyers v. City of Chicago*, 10 F.4th 704 (7th Cir. 2021). In

---

proceeds) itself presents a takings issue. *See Tyler v. Hennepin County*, No. 22-166, slip op. at 5–6 (U.S. May 25, 2023).

[7] In a citation of supplemental authority, Mr. Jenkins argues that "[t]he United States also never argued abandonment, thus waiving the argument." Citation of Supplemental Authority at 2, *Jenkins v. United States*, No. 22-1378 (Fed. Cir. June 1, 2023), ECF No. 70. A 28(j) letter is not an opportunity to make additional arguments not in the briefing. *Hall v. Shinseki*, 717 F.3d 1369, 1373 n.4 (Fed. Cir. 2013). In any event, the government does not necessarily waive an argument simply by failing to move for summary judgment on that ground.

that case, the named plaintiffs were detained at Cook County Jail and, pursuant to Chicago Police Department policy, many of their personal effects were confiscated. *Id.* at 706–07. When the property was taken, plaintiffs received a receipt that explained that property not recovered within 30 days would be considered abandoned. *Id.* at 707. Plaintiffs sued the city alleging that they received inadequate notice that the city would destroy their property if not reclaimed within 30 days and that this inadequate notice violated the takings clause of the Fifth Amendment. *Id.* at 708.

The Seventh Circuit noted: "Nothing compels the City to hold property forever. At the other end of the spectrum, we can assume that a statutory declaration of abandonment after only one day would be untenable. But where, between a day and forever, does the Constitution draw the line?" *Id.* at 711. The court held that the city's 30-day abandonment rule was not unconstitutional because "the detainee knows exactly what has been taken from him and when that confiscation occurred[,] how . . . to get his property back and how quickly he must do so [and] . . . the hard-copy Notice plainly states that '[i]f you do not contact the [Chicago Police Department] to get your property back within 30 days of the date on this receipt, it will be considered abandoned . . . and the forfeiture process will begin . . . .'" *Id.* at 712 (emphasis omitted; second bracket in original).[8] The potential failure to provide notice to Mr.

---

[8] On appeal the government at various points relies on compliance with state law notice requirements. Those state law provisions—designed to govern seizures by state authorities and the obligations of impound lots—do not affect the constitutional claims.

Jenkins distinguishes this case from *Conyers*, but issues of abandonment still remain.

II

We turn to the due process claim that is framed on appeal as an illegal exaction claim. The theory is that an illegal exaction occurred when and if the government transferred the cars to the impound lot. Mr. Jenkins' problem is that while his pro se complaint generally alleged a due process violation, it nowhere asserted an illegal exaction theory. The district court did not err in dismissing this due process claim for lack of jurisdiction. However, on remand Jenkins may seek leave to amend to assert an illegal exaction claim. We have no occasion to opine on such a theory until the complaint is amended.

CONCLUSION

As to the takings claim, this case unhappily presents numerous difficult questions that we reserve for the future. For the moment, the grant of summary judgment is vacated, and the case is remanded for further proceedings consistent with this opinion. As to the illegal exaction theory, the jurisdictional dismissal is affirmed, but the case is remanded to permit Mr. Jenkins to seek leave to amend.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART**

COSTS

Costs to appellant